# Cases

---

THOMAS F. MALONEY, Appellant, *v.* IROQUOIS BREWING COMPANY, Respondent, Impleaded with JOHN H. MALLON.

*Tripartite contract for the sale of a liquor business — liability of a brewing company, engaging to pay a specified sum to the vendor when the vendee should have purchased a certain amount of beer — "receive" not construed as "collect" — the brewing company not bound to enforce a chattel mortgage — construction by acts of the parties — estoppel.*

Thomas S. Maloney, the Iroquois Brewing Company and John H. Mallon entered into a tripartite agreement consisting of three distinct undertakings:

1. The agreement on the part of Maloney to sell the good will of his saloon business and the furniture connected with it to Mallon.

2. The agreement of Mallon to pay the Iroquois Brewing Company the sum of $2 per barrel for each barrel of beer purchased by him of it, in addition to the regular price, until he should have paid the brewing company the sum of $1,200; the execution by Mallon to the brewing company of a chattel mortgage upon the personal property purchased by him of Maloney to secure the performance of his (Mallon's) part of the contract, and, as further security to the same end, the assignment by Mallon to the brewing company of the lease of the premises in which the business was conducted, and the procurement by Mallon of the consent of the landlord to such assignment.

3. The agreement on the part of the brewing company that it would "*receive* said money, and when the sum of $1,200 shall have been *received, as provided*," it would pay Maloney the sum of $3,000.

Mallon paid the additional $2 a barrel for the beer purchased by him for some time, but he never assigned the lease of the premises to the brewing company. During the time when Mallon was making his additional payments to the brewing company the latter made advances to Maloney exceeding the amount of the additional payments which it had received from Mallon, but when

Mallon made default in the additional payments, it refused to make further advances. It, however, did offer to assign to Maloney the chattel mortgage executed by Mallon, but Maloney declined to accept the mortgage and brought an action to compel the brewing company to pay to him the balance of the $3,000 which he was to receive as the purchase price of the property sold to Mallon.

*Held,* that the brewing company was not liable to pay the $3,000 to Maloney until it had received from Mallon $1,200 to be composed of the extra $2 paid by Mallon for each barrel of beer purchased by him of it;

That the words "receive" and "received" as used in the contract could not be construed as synonymous with "collect" and "collected," especially as it appeared that the contract was drawn by Mallon's attorney under the supervision of Maloney's attorney and that the brewing company had no legal representative in the matter and for the further reason that the brewing company knew that Mallon was not financially responsible;

That the fact that the chattel mortgage executed to the brewing company by Mallon contained the usual stipulation authorizing the mortgagee to take possession of the mortgaged property in the event of a default, did not impose on the brewing company any obligation to collect from Mallon the additional payments;

That the advances made by the brewing company to Maloney during the time when Mallon was making his additional payment of two dollars per barrel did not operate to place a different construction on the contract, as it is only in cases where the language of a contract is indefinite or ambiguous that the acts of the parties are received as a practical construction thereof;

That the brewing company was not estopped to deny that the certificate of renewal of the chattel mortgage filed by its treasurer was erroneous in its statement of the amount due, where it appeared that the error was due to a mistake, and that no one was misled to his prejudice thereby.

APPEAL by the plaintiff, Thomas F. Maloney, from a judgment of the Supreme Court in favor of the defendant, the Iroquois Brewing Company, entered in the office of the clerk of the county of Erie on the 8th day of January, 1900, upon the report of a referee.

*Simon Fleischmann* and *Harry L. Taylor*, for the appellant.

*Robert F. Schelling*, for the respondent.

Judgment affirmed, with costs, on the opinion of LYMAN M. BAKER, referee.

All concurred, except RUMSEY, J., dissenting.

The following is the opinion of the referee:

Lyman M. Baker, Referee:

The agreement upon which this action is founded is tripartite, and consists of three distinct undertakings necessary to be considered here :

1. The agreement on the part of the plaintiff to sell the good will of the business and the furniture connected with it to Mallon.

2. The agreement of Mallon to pay the Iroquois Brewing Company the sum of $2 per barrel for each barrel of beer purchased by him of it, in addition to the regular price, until he should have paid the defendant company the sum of $1,200; the execution by Mallon to defendant company of a chattel mortgage upon the personal property purchased by him of plaintiff, to secure the performance of his (Mallon's) part of the contract, and as further security to the same end, the assignment by Mallon to the defendant company of the lease of the premises in which the business was conducted, and the procurement by Mallon of the consent of the landlord to such assignment.

3. The agreement on the part of the defendant company that it would "*receive* said money, and when the sum of $1,200 shall have been *received, as provided*," it would pay plaintiff the sum of $3,000.

In the consideration of this contract we must not lose sight of the fundamental principle that " Every party to such a contract is bound only to the extent of the promises made by him, and any party thereto may insist upon the performance of every promise made to him or for his benefit by the party or parties who made it." (*Berry Harvester Co.* v. *Walter A. Wood Co.*, 152 N. Y. 540, 547.)

Tested by this rule, what is the extent of the promise made by defendant company to plaintiff ?

That when it should have received from Mallon the chattel mortgage and assignment of the lease with the assent of the landlord, and $1,200 to be constituted by the sums of $2 paid by him to the company in addition to the regular price upon each barrel of beer purchased by Mallon of it, then it should pay plaintiff the sum of $3,000.

That the $1,200 so to be received was to be composed of this extra $2 cannot well admit of doubt, nor is it open to question here that the payment of the $3,000 to plaintiff by the defendant company was dependent upon the sum of $1,200 having been so received by it, and was not to be paid until then.

The distinct allegation is made in the complaint " That in consideration of the said defendant Mallon's agreeing to purchase and use exclusively upon said premises the product and beer of the defendant Iroquois Brewing Company, under said agreement, for which the said defendant Mallon agreed to pay to the said Brewing Company the sum of two dollars ($2.00) per barrel, over and above the regular price of said beer per barrel, which said sums of two dollars should be received by the said Brewing Company, said Brewing Company did agree that when the sum of twelve hundred dollars ($1,200) should be so received the said defendant Iroquois Brewing Company should pay over to the plaintiff the full sum of three thousand dollars ($3,000) agreed to be paid as the purchase price for said business and fixtures by the defendants," and that is the position of the defendant company.

The plaintiff now contends that the words "receive" and " received," as used in the contract, should be construed as synonymous with " collect" and " collected," and his argument and the cases cited in his behalf have received careful consideration.

In each of these cases want of mutuality had been interposed to defeat the contract in suit, the contract having been silent as to any obligation on the part of the party invoking it as a defense, and the courts say that the word " agrees " implies a mutuality under circumstances where without it the intention of the parties would be defeated. (*Baldwin* v. *Humphrey*, 44 N. Y. 609; *Butler* v. *Thomson*, 92 U. S. 412; *Jugla* v. *Trouttet*, 120 N. Y. 21, 27.)

But in this case there is no office for implication; the contract specifies precisely what the defendant company was to do, and when it should be done; there is neither doubt nor ambiguity about that feature of it.   It was simply to receive the $2 per barrel additional, and when that should reach the amount of $1,200, and the defendant was in possession of the security it was entitled to from Mallon, it was to pay plaintiff $3,000 ; and if we are to interpolate in the contract the words " collect" and " collected " in lieu of " receive " and " received," we are making an entirely different agreement from the one in hand, and one not in conformity with the intention of the parties to it, so far as any light has been thrown upon the subject by the pleadings or proofs.

It must be borne in mind that this contract was drawn by a

·lawyer, the counsel for Mallon, under. the supervision of another lawyer, the counsel.for plaintiff, defendant company having no legal · representation in the matter; and it is difficult to see how plaintiff and his counsel could have allowed the word "receive" to be used instead of "collect," had that not been the intention.

There is not the slightest evidence, nor is it charged in the complaint, that the contract as drawn is not as originally intended, nor that the words "receive" and "received" were not used advisedly and understandingly, or that the defendant company intended to, or that plaintiff expected it would do otherwise than it has undertaken in the proffered contract in plain words to do; and to put a construction upon the words under discussion, as the referee is invited by the plaintiff to do, is to construe it directly contrary to its manifest sense.

There is another important circumstance to be given weight in the consideration of this feature of the controversy : When Mallon and plaintiff were negotiating with the defendant company in relation to the purchase, as plaintiff testifies, "Mr. Mallon told him (Niederpruem) what he wanted. That I was going to get out and had promised him the place for some time, and he wanted it, but, of course, not having any money he wanted the brewery to advance the money; and he thought a little while and he says, 'You haven't got any money at all?' and Mallon says, 'No.'"

After this notice of the impecuniosity of Mallon, it is quite easily comprehended why the word "receive" was used as the measure of the defendant company's obligation, and why it did not undertake to become insurer to plaintiff of the absolute payment by Mallon to it of the two dollars additional per barrel.

It certainly was competent for defendant company to limit its duty to plaintiff by deferring payment to him of the whole consideration of the purchase until such time as it should receive the $1,200 as provided in the contract, and as well all the security contemplated by the contract to be given, and not to assume the responsibility of enforcing the collection of the amount from a person who, to his knowledge, had nothing; and not only that, but who had an unsatisfied judgment against him at the time. ·

The position taken by plaintiff, that inasmuch as the chattel mort-. ·gage taken by the company from Mallon contained a stipulation that

" If default be made in such payment, or if the said party of the second part shall at any time deem itself in danger of losing said debt or any part thereof by delaying the collection thereof, * * * the said party of the second part is hereby authorized to take possession," etc., it must be assumed that the word " receive " was used as synonymous with " collect," seems untenable.   It is a phrase or stipulation contained in nearly every chattel mortgage executed in this State. If the interpretation of the contract as here made is the correct one, there would be no doubt that the company would be interested in collecting until it should have paid the full purchase price to plaintiff, and then only to the extent of what it might have paid plaintiff in excess of the additional payments made to it by Mallon.   Its insertion in the chattel mortgage was as much for the benefit of plaintiff as for that of the brewing company.   While it conferred a privilege upon the company in that regard, there was nothing obligatory upon the company to take advantage of it.

There is nothing unreasonable about this interpretation of the agreement.   To paraphrase the language of Judge MARTIN in *Gillet* v. *Bank of America* (160 N. Y. 549), " If there is any uncertainty or ambiguity as to the meaning of the agreement it should be resolved in favor of the defendant company, as it was plaintiff's attorney who assisted in its preparation, and if there is any doubt as to the meaning of the terms employed, the plaintiff is responsible for it, as the language is wholly his own."   That is, the choice of words was in his power and it cannot well be doubted that the one selected was expressive of just what he and his attorney understood to be the agreement, in so far as it related to the obligation assumed by the brewing company.   Nor is the plaintiff by such interpretation placed at the mercy of either party defendant.   Mallon's promise to pay the additional two dollars per barrel clearly inured to the benefit of plaintiff (*Berry Harvester Co.* v. *Walter A. Wood Co.*, *supra*), and plaintiff could insist upon its performance by him.   He had his remedy at law for its breach, or he could come into a court of equity, as he has done, and ask under equitable conditions for an assignment of the chattel mortgage or an enforcement of it.   He has never been, since Mallon's default, remediless.

Plaintiff urges that the defendant company has by its various payments of money to and on behalf of plaintiff placed a construc-

tion upon the contract at variance with the views here expressed, in that it has paid or advanced to plaintiff, and at his request large sums of money in excess of the amount it has received from Mallon as additional payments; but that fact, it would seem, is of no moment here in that regard, as it is only in cases where the language of a contract is indefinite or ambiguous that the acts of the parties in carrying it out are received as a practical construction of it. (*Hill* v. *Priestly*, 52 N. Y. 635.)

These advances to plaintiff obviously were made during a period of time when Mallon was making his additional payments to the brewing company, and when it was undoubtedly expected that Mallon would fulfill his contract. Plaintiff's necessities were well known to the officers of the company, who generously sought to relieve them, and it is not apparent why these favors should be tortured into a recognition of liability on the part of the benefactor to plaintiff, to the extent of the entire purchase price.

It is difficult to see why defendant company is estopped to deny that the certificate of renewal of the first chattel mortgage filed by its treasurer was erroneous in its statement of the amount due. The amount stated as then due was clearly and palpably a mistake; no one was misled to his prejudice, or injured by it, or acted upon it, or was placed in any position by the act that would now render it unjust, unfair or inequitable to assert the truth, the presence of which is of the very essence of the principle of equitable estoppel.

Mallon, being the debtor, certainly could take no advantage of the error, and the rights of neither purchaser nor incumbrancer had intervened; and nothing whatever had occurred in the interval between the filing of the certificate and the new chattel mortgage that has in any possible way been injurious or prejudicial to any one concerned.

The new chattel mortgage did not, it is conceded, state the true amount of the indebtedness to secure the payment of which it was given, as it then existed, but that can work injury to none of the parties to this controversy; to the extent of the real indebtedness it can be enforced, and that is as far as plaintiff and the company are interested; to no larger amount can it be enforced, and that is as far as Mallon is interested.

When it was ascertained that Mallon was making default in his

payments of the additional amounts of beer purchased, the brewing company did all it was called upon to do legally or morally, it would seem; it offered to assign to plaintiff the chattel mortgage it held, but plaintiff declined to accept it. It had already paid plaintiff all that it had received in the way of additional payments. It could not assign to him the lease of the premises, because it could not get the assignment from Mallon. The chattel mortgage was admittedly insufficient security for the amount involved; plaintiff declined to accept it for that expressed reason; and it was so regarded by the company. It is, therefore, not apparent upon what principle, legal or equitable, the defendant company can be held liable for the payment of the balance of the purchase price, when it has neither received the prerequisite amount from Mallon, nor an essential part of the security agreed to be given it by Mallon as a part of the consideration inducing it to enter into the tripartite agreement.

The defendant company has advanced plaintiff a large amount of money above what he was entitled to receive from it, and should recover the excess in the manner indicated in the report.