WEAVER HARDWARE COMPANY, Plaintiff, *v.* MAX SOLO-
MOVITZ et al., Defendants.

(Supreme Court, Monroe Equity Term, January, 1917.)

Lien Law, §§ 9, 9(4), 23 — action to foreclose mechanic's lien — when
notice of lien must be filed — evidence — pleading — priority of
dower right over liens— Code Civ. Pro. § 533 — contracts —Code
Civ. Pro. § 1629 — when notice of mechanic's lien defective — stat-
utes — mortgages — judgments.

Usury — when mortgage not usurious — judgments — negotiable instru-
ments.

Negotiable instruments — who is an accommodation indorser — usury —
mortgages — assignments — who is a bona fide purchaser of notes
before maturity — what constitutes building loan agreement —
pleading.

Where, on the trial of an action to foreclose a mechanic's
lien for materials furnished, the evidence shows that the
notice of lien was not filed within ninety days after the
last item of the materials was furnished to the owner of the
property against which the lien was filed, the complaint must
be dismissed.

In such case, plaintiff will not be permitted to amend the
complaint in such manner as to set up a judgment recovered
in another action for the same materials and to enforce the
lien thereof; such an amendment would enable plaintiff to
entirely change his action both as to facts and theory and is
not one contemplated by section 723 of the Code of Civil
Procedure.

Where the wife of the owner of the property was made a
defendant in the action, her motion to dismiss the cross-
answers of the various lienors on the ground that her dower
right in the property has priority over said liens will be
granted.

Under section 533 of the Code of Civil Procedure, which
provides that in pleading performance of a contract it is suffi-
cient to state generally that the party has duly performed
all the conditions on his part, an allegation that he has per-
formed his part of the contract set forth in the pleading
is insufficient.

Section 1629 of the Code of Civil Procedure, which requires
that the complaint in an action to foreclose a mortgage upon

real property must state whether any other action has been brought to recover any part of the mortgage debt, etc., applies to an action to foreclose a mechanic's lien and unless complied with the complaint will be dismissed for insufficiency.

Under section 9 of the Lien Law a notice of mechanic's lien which does not state the value of all the labor and materials rendered and furnished but only that portion thereof remaining unpaid, such balance being stated as the total amount, is sufficient.

A notice of mechanic's lien which does not separate items for labor and materials furnished from those to be furnished is defective as not a sufficient compliance with section 9(4) of the Lien Law.

While under section 23 of the Lien Law a notice of mechanic's lien must be read as a whole and liberally construed, a substantial compliance with the provisions of the Lien Law being sufficient, non-compliance with the absolute requirements of the statute cannot be excused.

Where a party fails to establish a mechanic's lien because the notice thereof does not comply with the statute or the complaint does not state a cause of action to enforce the lien, he may, if the complaint states a cause of action for goods sold and delivered or labor performed, recover a personal judgment as in an action on contract.

Where in an action to foreclose a mechanic's lien a cross-answer, based on an entire contract and seeking to enforce a mechanic's lien thereunder, does not allege due performance as required by section 533 of the Code of Civil Procedure, it is insufficient to constitute a cause of action for goods sold and delivered or for labor performed under the contract and a personal judgment cannot be granted in case a valid mechanic's lien is not established.

Where the holder of a mechanic's lien who had not filed it against a prior mortgagee of the property, as owner, was granted a personal judgment instead of a foreclosure, he may avoid the mortgage on the ground of usury.

Where, in good faith, a mortgage to secure an indebtedness and payment for lumber to be furnished is given in a larger amount than the debt and lumber furnished, upon the understanding that it was not to be enforced beyond the amount which might be due and owing at the time of its enforcement, the mortgage is not usurious, and the fact that the mortgagee

was told that there were prior mortgages which must be first paid, did not estop him from attacking them for usury.

Upon the statement of the prospective·payee of certain notes to be given for money advanced to build a house, that he intended to take a mortgage on the property to secure their payment, his bank, which did not know the maker, solely upon the payee's credit, agreed to and did discount said notes which at maturity were renewed. *Held,* that the payee's indorsement upon the renewal notes did not make him an accommodation indorser so as to preclude the defense of usury in an action thereon.

The transfer of a note operates as an assignment of a mortgage given to secure it and the bank as a *bona fide* purchaser of the notes before maturity took the mortgage given to secure .their payment free of all equities which existed in favor of third parties while it was held by the mortgagee without regard to when the bank took a ·formal assignment of the mortgage.

The agreement between the parties to the mortgage and the notes pursuant to which the payee of the notes advanced money thereon to enable the maker to build a house did not constitute a building loan agreement within the meaning of the statute.

The maker of the notes and the other indorser having both by their pleadings and upon the trial denied the usurious character of the notes and of the mortgage, the payee was entitled to recover his loan and to the benefit of his security.  ·

ACTION to foreclose a mechanic's lien.

John Van Voorhis' Sons, for plaintiff.

George E. Warner, for Max Solomovitz, Anna Solomovitz and George H. Stalker.

Nicholas J. Weldgen, for Lyell Avenue Lumber Company.

A. M. Little, for American Clay and Cement Corporation and Morris Levin.

Francis S. Macomber, for Merchants' Bank of Rochester.

James P. O'Connor (Charles Van Voorhis, of counsel), for Ruth M. Laube, Charles F. Rodenbeck, Eugene G. Sackett Company, Inc., and Edward Towe.

SAWYER, J.   This action is brought to foreclose a mechanic's lien.

The defendants are five mechanics' lienors, two judgment creditors who have failed to answer, George H. Stalker mortgagee, and the Merchants' Bank of Rochester, assignee of that mortgage, the Lyell Avenue Lumber Company mortgagee, Max Solomovitz, the owner of the property, and his wife, Anna Solomovitz.

The defendant mechanics' lienors have answered, asking for foreclosure of their various liens and in their answers have attacked both the Stalker and the Lyell Avenue Lumber Company mortgages. The mortgagees have answered, asking for the foreclosure of their mortgages and attacking the mechanics' liens. Upon the trial the defendant Lyell Avenue Lumber Company withdrew its objection to the validity of the various liens and was, upon motion, permitted to amend its answer so as to join with the mechanics' lienors in the attack upon the validity of the Stalker mortgage.

The evidence brought out the fact that plaintiff's mechanic's lien was not filed within ninety days after the last item of the material was furnished the defendant Solomovitz, and the complaint was upon motion thereupon dismissed.  It appeared, however, that upon February 17, 1915, in another action brought to recover the value of the same materials for which the lien was filed, a judgment had been rendered in favor of plaintiff and against the defendant Solomovitz in the sum

of $376.88, and after the motion to dismiss his complaint was made plaintiff asked to amend same in such manner as to set up this judgment, including the other necessary allegations, to the end that he might thereunder as a judgment creditor of the defendant Solomovitz attack the Stalker and Lyell Avenue Lumber Company mortgages. It requires but a bare recital of this motion to show that it is hereby sought to abandon the cause of action found untenable, and upon entirely new facts and theory set up one different from that upon which the complaint was framed and upon which the parties were before the court. It may be said that all the parties interested in this property are in a court of equity which has, in the interest of justice, power to do all things necessary for the adjustment of their respective rights; generally speaking, this is true, but it does not seem that the power of the court even on its equity side ought to extend so far as to permit the plaintiff upon the trial to entirely change his action, both as to facts and theory, thereby requiring defendants to meet and combat claims of which they have theretofore received no notice. As was said in *Southwick* v. *First Nat. Bank of Memphis,* 84 N. Y. 429: "Pleadings and a distinct issue are essential in every system of jurisprudence, and there can be no orderly administration of justice without them. If a party can allege one cause of action and then recover upon another, his complaint will serve no useful purpose, but rather to ensnare and mislead his adversary." The amendment sought is not one of those contemplated by section 723 of the Code of Civil Procedure, but falls rather within the prohibition of a long line of cases, of which the following are typical: *Perry* v. *Levenson,* 82 App. Div. 94; *Romeyn* v. *Sickles,* 108 N. Y. 650.

Plaintiff's motion to amend, decision of which was by consent reserved, is, therefore, denied with the usual exception.

The plaintiff thus eliminated from the action, there remains only to be considered the rights of the defendants as put in issue by the various cross answers.

At the outset of the trial Mr. Warner, in behalf of the defendant Anna Solomovitz, moved to dismiss the cross answers of the various mechanics' lienors as against her, upon the ground that she is the wife of the owner and, as such, entitled to a dower in the property in priority over the liens of that description.

Decision upon this motion was, at the time, reserved, but the fact being conceded same is now granted with exceptions to those defendants.

At the same time he, also, in behalf of the defendants Solomovitz, Stalker and Merchants' Bank of Rochester, moved to dismiss such cross answers, upon the grounds, briefly summarized, that same, and each of them, fail to allege a cause of action in that they do not comply with the provisions of sections 533 and 1629 of the Code of Civil Procedure, and that the liens themselves are defective because not in conformity with the provisions of section 9 of the Lien Law, particularly subdivision 4 thereof.  Other grounds mentioned applicable to certain of them specifically are not necessary to here consider.  Defendants rested upon these motions without suggestion of amending their pleadings to meet same, and it, therefore, becomes incumbent to dispose of them, decision having been at the time by consent postponed.

Section 533 provides that in pleading performance of a condition precedent the party may, instead of setting out the facts in detail, state generally that he has *duly* performed all the conditions on his part, while section 1629 requires that the complaint in an action

to foreclose a mortgage upon real property must state whether any other action has been brought to recover any part of the mortgage debt, and, if so, whether any part thereof has been collected.

An examination of the answers to which this motion relates discloses that in all, except that of the defendant American Clay and Cement Corporation, there is a general allegation that the answering defendant has performed his part of the contract therein set out, but not an allegation of *due* performance as the Code section (533) demands, and also discloses an entire absence of the allegation required by section 1629. This latter section, notwithstanding its apparent limitation to actions for the foreclosure of mortgages, extends to those for foreclosure of mechanics' liens and is unquestionably applicable here. The motion in so far as it seeks to test the liens set up by these four answers by the standard of section 9 of the Lien Law need not be at this time discussed for, from what has been said, it follows that the motion to dismiss them as insufficient in pleading is well taken and must be granted, with the proper exception. *Feuerstein* v. *German Union Fire Ins. Co.,* 141 App. Div. 456; *Marcus Const. Co.* v. *Weinbros Real Estate Co.,* 162 id. 495; *Bachmann* v. *Spinghel,* 164 id. 725; *Gates & Co., Inc.,* v. *National Fair & Ex. Assn.,* 172 id. 581.

The cross answer interposed by the defendant American Clay and Cement Corporation complying, as it does, with the requirements of both the Code sections mentioned, it becomes necessary to consider the question raised as to its conformity with section 9 of the Lien Law.

This defendant's lien was filed by one Morris S. Levin and had its inception in a contract between him and the defendant Max Solomovitz, under which Mr. Levin

was to perform certain services and furnish certain materials in consideration of the payment to him of the sum of $5,000. The lien was filed for an unpaid balance of $3,200 due for labor and materials furnished under the contract and as extras. The defendant American Clay and Cement Corporation now holds it under an assignment from Mr. Levin. It will be observed that the lien does not state the value of all the labor and materials rendered and furnished by Mr. Levin, but only that portion thereof remaining unpaid for, such unpaid balance being stated as the total amount. Such a statement has, until recently, been thought insufficient and objections to the sufficiency of liens upon that ground have been frequently sustained by the trial courts. The rule now seems to be settled otherwise. *Brady* v. *Rodenbach,* 174 App. Div. 795, and cases there cited.

The other principal objection arises under subdivision 4 of section 9 of the Lien Law. So far as material at this time, the notice claims a lien for $2,000, " being for the value and agreed price of certain work, labor and services *performed and to be performed,* and materials *furnished and to be furnished, to wit.* \* \* \* That the name of the person by whom the lienor was employed, or to whom he *furnished said materials,* and to whom he *is to furnish said materials,* and with whom the contract was made, \* \* \* That the amount unpaid to said lienor for *such labor and materials* is \* \* \* that the real property for the improvement of which *said labor was performed* and *said materials furnished* is," etc.

It is permissible in such a notice to combine both labor and materials in one item, but one which does not separate labor and materials furnished from those to be furnished is defective. *Gates & Co., Inc.,* v. *National Fair & Ex. Assn., supra; Finn* v. *Smith,* 186 N. Y. 465.

These notices must, of course, be read as a whole and construed liberally, a substantial compliance with the Lien Law being sufficient for their validity. Lien Law, § 23.

This, however, will not excuse noncompliance with absolute requirements of the statute. *New Jersey, Steel & I. Co.* v. *Robinson,* 85 App. Div. 512; *Mahley* v. *German Bank,* 174 N. Y. 499.

The lien now before us nowhere separates the labor, services and materials furnished from those to be furnished, neither does it state the price or agreed value of those furnished as distinguished from those still to be furnished for which a lien is claimed.

In other words, from the notice of lien as a whole it is impossible to determine how much of the labor and services and materials have been furnished or how much remain to be furnished; nor does it from the context appear that all the labor and services have been rendered and furnished, so that the words " to be performed " and " to be furnished " may be treated as surplusage. The final statement that " real property for the improvement of which said labor was performed and materials furnished " is entirely consistent with this view, and I think does not remedy the notice which must, to my mind, under the cases be held defective.

The many decisions to which, in support of this lien, my attention has been directed have been carefully examined, but none of them seem to overrule the authority of those above cited.

*Gilmour* v. *Colcord,* 183 N. Y. 343, upon which especial stress is laid, goes no further than to confirm as sufficient the description of the labor and material there involved, and the question here presented seems not to have been before the court or considered. It

does, however, sustain the sufficiency of the description used in the lien now under examination.

Believing as I do this lien to be thus defective, the objection thereto must be sustained and defendant's answer in so far as it seeks foreclosure thereof dismissed.

The rule in cases of this character is, that where a party fails to establish a lien because the notice thereof does not comply with the statute, or his pleading is found insufficient because it does not allege facts sufficient to constitute a cause of action to enforce a mechanic's lien, if it contains allegations sufficient to constitute a cause of action for goods sold and delivered or labor performed a personal judgment may be recovered as in an action on contract. *Niemeyer* v. *Woods,* 175 N. Y. 492; *Abbott* v. *Easton,* 195 id. 372. With this rule in mind, Mr. Van Voorhis, acting as counsel, at the close of the trial asked to amend the answers of the defendant lienors so as to demand personal judgment against the defendant Max Solomovitz, in event the objections to the sufficiency of any or all of the liens filed should be sustained, and this motion is granted with exception.

As to the answers, other than that of the American Clay and Cement Corporation, if they had been dismissed only upon the ground that the notices of lien pleaded were defective, or only because of failure to comply with the requirements of section 1629 of the Code, or upon those two grounds alone, unquestionably a personal judgment in each instance would follow. But in approaching the question of personal judgment we are confronted with the fact that these cross answers are each based upon an entire contract *due* performance of which is not alleged, and such omission to comply with the provisions of section 533

of the Code renders the pleadings insufficient to constitute a cause of action for goods sold and delivered, or for labor performed under the contract. Under such circumstances personal judgment cannot be granted. *Abbott* v. *Easton, supra.*

In the case of the American Clay and Cement Corporation the answer does sufficiently allege a cause of action for goods sold and delivered and labor performed.

It appears that a dispute had arisen between Mr. Levin and Mr. Solomovitz as to the amount which was actually unpaid under their contract and for the extras. This dispute, after the filing of the notice of lien, was submitted to an informal arbitration in which the indebtedness was determined to be $1,802.10, which sum only is now claimed under the lien in question.

Personal judgment against the defendant Max Solomovitz for that amount with interest is accordingly awarded.

The holder of a mechanic's lien may avoid a preceding mortgage upon the ground of usury even though he has not filed his lien against the mortgagee as an owner. *Berdan* v. *Sedgwick,* 40 Barb. 359; *Thompson* v. *Van Vechten,* 27 N. Y. 568; *Union Dime Sav. Inst.* v. *Wilmot,* 94 id. 221.

Whether when the lien has been dismissed as defective and the holder granted a personal judgment instead of a foreclosure that right continues presents a novel question and one not free from doubt. In principle, however, I can see no reason why when, as here, all the facts are contained within the pleadings, and all the parties before the court, their rights should not be finally adjusted. This defendant, upon the facts it has pleaded and proved, is awarded a judgment, and the status of that judgment as regards the claim of the other defendants seems, under the circumstances, a

competent inquiry and properly to be determined. *Bowery Sav. Bank* v. *Belt,* 66 Hun, 59.

On August 12, 1914, the defendant Max Solomovitz was indebted to the defendant Lyell Avenue Lumber Company for materials furnished in connection with what was known as the Electric avenue job, together with interest upon the same, in the sum of $4,425.58; immediately prior thereto it had also furnished and had yet to furnish to Solomovitz lumber and other materials for use in connection with the Lake avenue job under a contract or estimate which, with interest and certain extras, amounted to $4,933.31. Becoming apprehensive as to the safety of the accounts, the lumber company began to press for either payment or security. Solomovitz informed the defendant Stalker, with whom he was then dealing, of the fact and was advised by him to give a mortgage if desired. In an interview that followed between Solomovitz, Stalker, their attorney, and Mr. Walter D. Blair, the vice-president of the lumber company and who was acting for it in the matter, Mr. Blair was told that the Lake avenue property was subject to a first mortgage held by the East Side Savings Bank, and to a mortgage for $20,000 held by the defendant George H. Stalker, and was informed by those defendants and their attorney that both these mortgages must be paid in full before he could receive anything upon the mortgage upon the same property which he was demanding, and that same would be an inferior security to the other two. With this information and understanding, Mr. Blair decided, in behalf of his company, to accept the third mortgage. Some uncertainty existed as to just the amount of material which would be yet required from the lumber company, but it was thought that $9,000 would cover the entire indebtedness, present and prospective, and

a mortgage was accordingly made and executed by Mr. and Mrs. Solomovitz to the defendant lumber company in that amount, Mr. Solomovitz being, however, at the time told no claim would be made under it beyond the value of the lumber, etc., which might be actually furnished. In other words, the agreement, as finally consummated, was that the mortgage should be sufficiently large to cover all indebtedness, present and anticipated, but was not to be enforced beyond the amount which might, at the time of enforcement, be due and owing for materials then actually furnished upon the two jobs.

For some reason, probably the interposition of some of these mechanics' liens, the full amount of lumber expected to be furnished to Solomovitz was not delivered, so that the amount actually owing to the lumber company at the beginning of this action, after deducting a payment of $500, theretofore made, amounted only to $7,575.17. As has been noted, the express agreement with Solomovitz was that the mortgage, while given for $9,000, was to stand only as security for such amount as might actually and truly represent his indebtedness to the Lyell Avenue Lumber Company, and under it that company has never claimed more, and now asks for judgment of foreclosure for that amount only.

The evidence is convincing that in the giving and making of this mortgage both parties acted in entire good faith. It is not tainted with usury, neither is there involved in it any fraud upon the subsequent lienors, and its holder is entitled to judgment decreeing its foreclosure to recover the sum for which it stands to it as a security with interest. This being so, the lumber company is entitled to attack the so-called Stalker mortgage. *Berdan* v. *Sedgwick, supra;*

*Thompson* v. *Van Vechten, supra; Union Dime Sav. Inst.* v. *Wilmot, supra.* It is not in the position of one who has purchased a mere equity of redemption in the mortgaged premises, but claims under a mortgage given to it directly by the owners of the fee. It is said, however, to be estopped from such attack by the fact that it had full knowledge of, and was told that both the Stalker and the East Side Savings Bank mortgages must be first paid. There is no evidence, other than its acceptance of its mortgage, in the face of such statements, that it made any disclaimer of intention to assert any rights it might obtain, although it is fair to assume it understood from what it had been told that its proposed mortgage was behind two others which were valid, subsisting and enforcible liens. If it had stated that it intended to use any mortgage which might be given it as a basis for an attack upon either or both the prior mortgages, quite likely the defendant Solomovitz, under the direction of defendant Stalker, would have refused to thus secure it, but there was nothing in the transaction which would lead it or any person to make such an assertion. It was resting upon the natural inference from the statements made to it concerning these two prior mortgages. It did nothing, either knowingly or negligently, which in any manner misled either Mr. Solomovitz or Mr. Stalker. The most that can be said is, that it was deceived by the very persons who now assert the doctrine of estoppel against its claim. I think, under such circumstances, no estoppel lies against it. *Young* v. *Bushnell*, 21 N. Y. Super. Ct. 1; *Maloney* v. *Iroquois Brewing Co.*, 63 App. Div. 454.

In considering the validity of the Stalker mortgage some review of the facts becomes pertinent. In the early part of January, 1914, the defendant Max Solo-

movitz approached the defendant George H. Stalker, informing him that he had become the owner of a piece of land on Lake avenue in the city of Rochester upon which he contemplated building, and asked for a loan sufficient to enable him to carry his proposed project through.  In reply he was informed by Stalker that he was willing to loan him about $16,000, providing his bank would discount the notes, but that he should want the mortgage made large enough to cover not only the proposed loan but such trim (so-called) as he might furnish for the building.  Thereafter Mr. Stalker inquired of the defendant Merchants' Bank if it would discount such notes, informing the officers of the bank that he intended taking a mortgage to secure the notes. This the bank agreed to do stipulating, however, that Mrs. Solomovitz should also become an indorser.  The bank did not know either of the defendants Solomovitz and its transaction was entirely with Mr. Stalker and solely upon his credit.  Mr. and Mrs. Solomovitz being notified that Stalker had arranged to make the loan executed to him four notes, each for the sum of $5,000, and at the same time, on the 9th day of January, 1914, made and executed and delivered to him a mortgage in the sum of $20,000, which recites that it is given to secure their payment, which mortgage was recorded in Monroe county clerk's office upon the 12th day of November, 1914.  Shortly thereafter the first of said notes was discounted by Mr. Stalker and, subsequently, two of the others.  The proceeds of each note when discounted were deposited by Mr. Stalker in his individual account, and he afterwards advanced $14,258.84 in small installments to the defendant Max Solomovitz as his building progressed.  In addition to such moneys, Mr. Stalker furnished trim, flooring and screens for the building to the value of $4,764.74.

The notes so discounted were as they fell due renewed, the renewal notes, computation of interest, etc., being made at Mr. Stalker's office who attended to the banking end of the business and in each instance paid the interest charges. The fourth note was never discounted, but was held by Stalker for the material he had furnished. In the negotiation for this loan Mr. Stalker stated to Mr. Solomovitz that in addition to the interest he would expect him to pay one and one-half per cent for the first three months and one per cent for each month thereafter while the loan should run, to which Solomovitz agreed.

It is now sought to justify this transaction and sustain the validity of these notes and mortgage upon the theory that the loan was from the bank to the defendant Solomovitz, and that the defendant Stalker was simply an accommodation indorser. In other words, that he had no connection with it whatever, except to sell, as he might properly do, his credit. *Flour City Nat. Bank* v. *Miller,* 4 App. Div. 585.

This does not seem to be the fact. The testimony, which has herein been only epitomized, clearly shows that the loan was from Stalker to Solomovitz and so understood, and it was, therefore, usurious in its inception. The transaction with the Merchants' Bank was between it and Stalker, at the latter's request and for his benefit, one object thereof, it is evident, being to furnish a basis for the claim of a sale of credit should future developments require it. That claim has no valid foundation but is a mere subterfuge put forth as a cloak for the usury. This being so no subsequent dealings can, as between these parties, cure the infirmity. *Claflin* v. *Boorum,* 122 N. Y. 385; *Grannis* v. *Stevens,* 216 id. 583.

With this conclusion the situation of the defendant

Merchants' Bank, as the holder for value and without notice of three of these notes, or the renewals thereof, and as assignee of the mortgage itself, becomes of importance.

The notes were discounted with it at various times during the winter of 1914, but the mortgage was not formally assigned until the 15th day of April, 1915, the instrument of assignment covenanting that there was due upon said notes and mortgage the sum of $20,000 and interest, a covenant which, perhaps, it is immaterial to observe, is not in accord with the facts.

The Merchants' Bank is organized under the law of the state of New York and is what is known as a state bank. It having discounted three of the notes before maturity, in the due course of business and without notice, their usurious taint is not available as against its demand for their enforcement. *Schlesinger* v. *Gilhooly*, 189 N. Y. 1; *Schlesinger* v. *Lehmaier*, 191 id. 69.

In my view the formal assignment to it, on April 15, 1915, of the Stalker mortgage made no difference with its right to avail itself of the benefit of that security. It is well-settled law in this state that the transfer of a note operates in law and equity as an assignment and transfer of a mortgage given to secure it to the extent of the amount of the note. The notes which the mortgage was given to secure constitute the debt, and the mortgage is the incident, and by presumption of the law passed with the transfer of the debt. The formal assignment of April 15, 1915, simply confirmed and put in visible form equitable rights already existing. The *bona fide* purchaser before maturity of a promissory note secured by a mortgage takes the mortgage as he takes the note free from any equities which existed in favor of third parties while it was held by the mortgagee. *Gould* v. *Marsh*, 1 Hun, 566; *Carpenter* v. *Longan*, 16 Wall. 271.

It is true that the holding of these cases has, from time to time, been criticised, both by the courts and text-book writers (*Elias Brewing Co.* v. *Boeger,* 74 Misc. Rep. 547), but the *Gould* case is a decision of the old General Term of this department, and, until it is overruled, is a controlling authority upon this court.

This bank holding these notes free from defense I am therefore constrained to say that the mortgage is enforcible for its benefit up to their amount with interest; beyond that amount it is open to the attacks made upon it. I do not deem the mortgage and notes executed between the defendants Solomovitz and Stalker to constitute a building loan agreement. The practical operation of the deal they had made gave it somewhat of that appearance, but, viewed as a whole, it seems clear the intention of the transaction was to avoid such an agreement and statutory dangers incidental thereto, and in this they succeeded.

The defendants Solomovitz both by their pleadings and upon the trial deny the usurious character of the notes and mortgage and as to them therefore Mr. Stalker is entitled to recover his loan, and to the benefit of his security.

Judgment is directed foreclosing both the Stalker and Lyell Avenue Lumber Company mortgages, and apportioning the proceeds of sale in the following amounts and order of priority: Merchants' Bank, $15,000 and interest; Lyell Avenue Lumber Company, $7,575.17 and interest; American Clay and Cement Corporation, $1,802.10 and interest (this last subject to dower of defendant Anna Solomovitz); George H. Stalker, $4,023.58 and interest; balance, if any, to defendant Solomovitz.

Judgment is directed in accordance with the foregoing. Costs to Merchants' Bank, Lyell Avenue Lum-

ber Company and American Clay and Cement Corporation from the fund.

Costs to defendant Stalker from fund remaining after other defendants shall have had payment in full.

The answers dismissed, and the complaint dismissed, without costs.

Judgment accordingly.