THE BERRY HARVESTER COMPANY, Appellant, *v.* THE WALTER A. WOOD MOWING AND REAPING MACHINE COMPANY, Respondent.

1. TRIPARTITE CONTRACT — CONSTRUCTION.   Whether the right or privilege, conferred by the promise of one party to a tripartite contract, belongs to one or both of the other contracting parties, depends upon the intention as gathered from the words used, read, so far as they are ambiguous, in the light of surrounding circumstances.

2. OBLIGATIONS AND RIGHTS OF PARTIES.   Every party to a tripartite contract is bound only to the extent of the promise made by him, and any party thereto may insist upon the performance of every promise made to him or for his benefit by the party or parties who made it.

3. JOINT AND SEVERAL PROMISES.   When a promise contained in a tripartite contract is to two jointly, a single act of performance satisfies it; but when it runs to two severally, there are two promises in fact and each must be performed.

4. ADVANTAGE OF PROMISE CONFINED TO PROMISEE.   A party to a tripartite contract can take no advantage of any stipulation, whether express or implied, made by another party with the third party only.

5. ACTION FOR BREACH OF TRIPARTITE CONTRACT.   A tripartite contract having been made by a corporation owning certain patents, a manufacturing corporation, and an inventor, concerning the perfecting, manufacture and sale of a certain machine, *held*, than an action brought by the first corporation against the second, to recover damages for an alleged violation of the contract in refusing to furnish the inventor with the means of continuing his experiments, thus rendering it impossible for him to perfect the machine contemplated by the parties, was not maintainable — it appearing that the contract contained no such stipulation on the part of the defendant with the plaintiff, or even with the inventor, as was claimed to have been broken.

*Berry Harvester Co.* v. *Walter A. Wood M. & R. M. Co.*, 84 Hun, 607, affirmed.

(Argued March 24, 1897; decided April 20, 1897.)

APPEAL from a judgment of the General Term of the Supreme Court in the third judicial department, entered February 25, 1895, which affirmed a judgment entered on a verdict for the defendant directed at Circuit.

This action was brought by the plaintiff, a foreign corporation, to recover from the defendant, a domestic corporation,

damages to the amount of $300,000 for the breach of a tri-
partite agreement made on the eighth of August, 1890,
between said corporations and one William H. Berry, who was
at the time the vice-president and chief stockholder of the
plaintiff.  Mr. Berry was an inventor, who had assigned to
the plaintiff various letters patent, already issued to him, and
inventions by him made for which applications for letters
patent were pending, all of which related to a harvesting
machine and a binder combined, designed to cut and bind
grain by the use of straw for bands so as to save the expense
of twine.  Prior to 1890 he was employed by the plaintiff to
perfect his inventions, which were incomplete, and to try and
make them a success.  The defendant was engaged in the
manufacture of harvesting machinery, and Mr. Wood, its
president, wished to secure a successful straw-binding machine.
His attention having been directed to Mr. Berry's inventions,
negotiations were entered into between these men, represent-
ing their respective companies, which resulted in the contract
that is the subject of this controversy.

After reciting the most of the foregoing facts, the contract
provides " that for and in consideration of the covenants and
agreements hereinafter contained, passing from each to the
other of the aforesaid companies, the said Berry Harvester
Co. hereby grants to the Walter A. Wood Mowing & Reap-
ing Machine Co.  *  *  *  a license to make, use and sell to
others to be used  *  *  *  harvesting and binding machines
and machines for making bands for harvesting and binding
machines, which embrace any of the inventions of said Berry."
Provision is then made for the payment to the plaintiff by the
defendant of a royalty on each binder made and sold embrac-
ing said inventions.  The license was exclusive and extended
through the life of every patent granted or to be granted to
Berry "for improvements in grain binders" or binding mate-
rial " now owned or hereafter to be owned" by him or his
company.  The agreement thus far had been between the two
companies only, but at this point provision is made for the
employment of Berry by the defendant " to perfect the har-

vesters and binders and the machines for making binding material contemplated in this license, and to do such other service as is possible for him to do in the way of supervision and superintendence at the factory " of the defendant " or in the field under the direction of the president or other officers * * , * and faithfully to perform such service for the term of three years from September first, 1890, * * * and, in consideration of such service," it agreed " to pay the said William H. Berry a salary of $4,000 per annum."

The agreement next proceeds between the two companies again, and the defendant agrees to pay the plaintiff $20,000 in cash, $10,000 down and the balance when 5,000 binders, embracing the inventions of Berry, shall have been made and sold by the defendant, which further agreed to keep the market supplied with such machines. In order to make this part of the agreement more definite, it was stipulated that at least one harvester and binder should be made by Berry at the expense of the defendant and offered for sale by it, and if Mr. Berry or his company should disagree with the other company " as to the practicability of the machine as a market machine, or what will supply the demand, said machine so constructed can be offered for sale by the said Berry Har-vester Co. or the said Berry * * * and the said Walter A. Wood Mowing and Reaping Machine Co. shall make so many of the same to fill such offering of the said licensors as they, the said licensors * * * may order and pay for at a price to be agreed upon by the parties hereto, which price in any case shall not be more than 25 per cent above cost of labor and material." The defendant agreed to " license other responsible parties, who shall desire to have a license, to make and sell binders and rope-making machines embracing " said inventions, and to pay seventy-five per cent of the license fees to the plaintiff, but was not to be under any obligation to do so until after it had made and sold 50,000 binders. During the period of employment of Berry by the defendant all inventions made by him relating to harvesters, and not con-nected with binders, and to mowers and reapers not employ-

ing automatic binders, were to be used by the defendant without the payment of any royalty, and it was to have the right to purchase the same, with full opportunity for negotiation as to terms before a sale to other parties.  Mr. Berry agreed to sign all papers necessary to procure patents on such inventions.  The plaintiff reserved the right to make, use and sell to others, to be used, machines for making bands for purposes other than binding grain.

After the execution of this contract, which contained no material provision except those mentioned, the first installment of $10,000 was paid by the defendant to the plaintiff, as provided, and Mr. Berry began to experiment in order to perfect the machine.  The defendant supplied him with a suitable place, and furnished him with material and assistants to carry on his work.  He invented a band-making machine that was successful, but did not make a combined harvester and binder that would use the bands successfully.  He experimented at the works of the defendant and tested his machines in the field, but none of them would work, although he made some progress.  None of the binders were marketable, and he failed to overcome the difficulties in the way.  The last machine made by him was not as successful as some that preceded it, which had been discarded as failures.  After he had worked for more than two years without accomplishing anything of practical value, aside from the machine to make bands, which was worthless to defendant without a binder that would use the bands, the defendant withdrew the facilities for further experiment.  This was about September 7, 1892.  Up to this time the defendant had defrayed the entire expense of the experiments, but it now refused to be to any further expense in that regard, although it offered to allow him to continue his experiments, while it continued to pay his salary until the expiration of the contract.  He still had faith in his ability to make a marketable machine, and was engaged in working out an idea suggested by the officers of defendant, in which, however, he did not believe, himself, when further facilities for experimenting were denied him, as

before stated. For a time he was assigned to other duties, but on the 30th of January, 1893, he was directed to employ his time wholly on the strawbinder, and to furnish the defendant with detailed drawings embodying his best ideas upon the subject. He made drawings accordingly, and on the 29th of March, 1893, the defendant wrote instructing him to devote his entire time to that work, and added : " We would say that after having experimented through three seasons with the strawbinder and finding that it is now no nearer completion than it was when you came here with the device, we do not wish to spend any more money than is entailed by your salary, or your own individual efforts as above set forth in making this machine." After that he experimented some with such appliances as he had, but not effectively, as he had shop room only, without further facilities. He applied to the plaintiff for assistance, but it was refused. He insisted that the withdrawal of facilities was a violation of the contract by defendant, which it denied, claiming that it had the right to refuse to waste any more money on useless experiments. It offered to build as many machines as the plaintiff or he would pay for, according to the terms of the agreement. Berry thought that he could have perfected the machine during the life of the contract, but other experts regarded the project as impracticable. He was paid in full for his salary at the rate of $4,000 a year for three years, as required by the contract. He is not a party to this action, which is brought by the Berry Harvester Company to recover damages from the defendant for an alleged violation of the contract, in that it refused after September 7, 1892, to provide Mr. Berry with the means of continuing his experiments, thus, as it insists, rendering it impossible for him to perfect the machine as contemplated by the parties.

At the close of the evidence the defendant moved to dismiss the complaint, because the plaintiff had failed to show any breach of the contract, or that it had suffered any damages. The court directed the jury to find a verdict for the defendant, and the plaintiff, after excepting, asked to go to the jury

upon the question whether the defendant had not broken its contract by withdrawing facilities from Mr. Berry for manufacturing the device, and whether it had not failed to show that said device was mechanically impossible of construction. The General Term affirmed and the plaintiff comes here.

*James Lansing* for appellant.   The question whether this contract was one for the building of a single machine or for experiments for the development and perfection of a marketable machine, was a question of fact for the jury and not of law for the court.   (*F. Nat. Bank* v. *Dana*, 79 N. Y. 108 ; *Moore* v. *Meacham*, 10 N. Y. 207 ; *Galen* v. *Brown*, 22 N. Y. 37 ; *White* v. *Hoyt*, 73 N. Y. 505.)   The court erred in not submitting the question as to what constituted a reasonable time to the jury.   (*Sullivan* v. *N. Y. & R. C. Co.*, 119 N. Y. 355 ; *S. S. Nat. Bank* v. *Sloan*, 135 N. Y. 371 ; *Mead* v. *Parker*, 111 N. Y. 262 ; *T. Nat. Bank* v. *Parker*, 130 N. Y. 415.)   The withdrawal by the defendant from Mr. Berry of all facilities for conducting further experiments upon the device in question, before the expiration of three years, was a breach of its obligation to the plaintiff under the contract. (*Pratt* v. *D. H. M. F. Ins. Co.*, 130 N. Y. 206.)   Although the action was brought by the plaintiff before Mr. Berry's three years' term of service had expired, it was not prematurely brought.   (*Everson* v. *Powers*, 89 N. Y. 527 ; *Howard* v. *Daly*, 61 N. Y. 362.)   If the plaintiff is entitled to recover, it should recover very substantial damages.   (*Wakeman* v. *W. & W. M. Co.*, 101 N. Y. 205 ; *Dart* v. *Laimbeer*, 107 N. Y. 664 ; *Young* v. *Hunter*, 6 N. Y. 203 ; *Gifford* v. *Waters*, 67 N. Y. 80 ; *U. S. T. Co.* v. *O'Brien*, 143 N. Y. 284 ; *Dickinson* v. *Hart*, 142 N. Y. 183.)

*George B. Wellington* for respondent.

VANN, J.   In order to decide whether the defendant violated its contract with the plaintiff, it is necessary to see precisely what it agreed to do.   There were three parties to

the contract, and the promises and agreements made by each were substantially as follows :

1. In consideration of the covenants and agreements passing between the plaintiff and the defendant, the former granted to the latter an exclusive and perpetual license to make, use and sell harvesting and binding machines, and machines for making bands embracing any of the inventions of Mr. Berry, whether then made or thereafter to be made, but reserved to itself the right to make, use and sell machines for making bands for purposes other than binding grain.

2. The defendant promised to pay the plaintiff a fixed royalty on every binder made and sold by it, covered by said inventions. It further agreed to pay the plaintiff $10,000 in cash at the time of signing the contract, and $10,000 more when 5,000 of said binders should have been made and sold ; that it would supply the demand for harvesters and binders and make at least one machine under the direction of Mr. Berry and offer it for sale ; and in case the plaintiff or Berry should disagree with the defendant as to the practicability of the machine as a market machine, that either of them might offer it for sale ; that it would make as many of the same as the plaintiff or Mr. Berry should order and pay for at not exceeding a certain percentage above the cost of labor and material ; that it would issue licenses to responsible parties to make and sell binders and rope-making machines embracing said inventions, and pay seventy-five per cent of the license fees to the plaintiff, provided 50,000 of such binders should have first been made and sold.

Aside from these stipulations with the plaintiff, the defendant agreed with Mr. Berry, individually, to employ him at a salary of $4,000 per year for three years in consideration of his services for that period in perfecting the machines and such other services as he could render in the way of supervision and superintendence at its factory or in the field under the direction of its officers.

3. Mr. Berry agreed to enter the service of the defendant upon the terms and conditions aforesaid, and to faithfully per-

form the services mentioned for the period of three years from September first, 1890. He stipulated that the license granted by the plaintiff to the defendant should embrace all letters patent, relating to said machines, then owned or thereafter to be owned by him during the life of the license, and that during the term of his employment whatever inventions he made, relating to the machines mentioned, should be used by the defendant without the payment of any royalty, and that it should have the option to purchase the same. He also promised to sign all proper papers to procure letters patent on such inventions.

The contract contains no express promise, material to the controversy, made by any one of the parties thereto, except as mentioned.

Whether the right or privilege, conferred by the promise of one party to a tripartite contract, belongs to one or both of the other contracting parties, depends upon the intention as gathered from the words used, read so far as they are ambiguous, in the light of surrounding circumstances. Every party to such a contract is bound only to the extent of the promises made by him, and any party thereto may insist upon the performance of every promise made to him or for his benefit by the party or parties who made it. The mere fact that there are three parties to the agreement does not enlarge the effect of any promise, except as it may extend the advantage to two persons, instead of one, where that is the intention. When the promise is to two jointly, a single act of performance satisfies it, but when it runs to two severally, there are two promises in fact and each must be performed. It will be observed that the stipulations in the contract before us are not all common to the three parties. While the defendant is interested in every stipulation, the interests of the others are mainly severed. The defendant covenanted with the plaintiff as to certain things, with Mr. Berry as to others, and with both as to others still. This is the form of the contract which is not ambiguous. The covenants in favor of plaintiff were supported by a consideration furnished by it only, while those

in favor of Berry rest upon a consideration flowing from him only.   The covenants in favor of plaintiff and Berry jointly, or jointly and severally, depend for their consideration upon the separate promise of each.   The rights conferred, whether joint, or joint and several, depend on the terms of the contract.   Where a several right only is conferred upon the plaintiff Mr. Berry is not interested in it, and where a several right is conferred upon Mr. Berry the plaintiff has no interest in that.

Mr. Berry, for instance, had no pecuniary interest, except indirectly, as a stockholder of the plaintiff, in the grant of licenses to the defendant under the patents owned by the plaintiff, or in the payment of royalties or of the sum in gross by the defendant to the plaintiff.   Those stipulations were expressly based upon " the covenants and agreements   *   *·  * passing from each to the other of the " two corporations, and he was not a party thereto, nor, in contemplation of law, interested therein.   So those relating to the employment of Mr. Berry, the nature of the services he was to perform, the source of the consideration, the compensation he was to receive and the like, are confined to him and the defendant.   The plaintiff is not a party to that portion of the contract, which is introduced by these words : " It is further mutually agreed by and between said William H. Berry and the Walter A. Wood Mowing and Reaping Machine Company," thus confining it to the two named and excluding the plaintiff.

The stipulations in which the three parties were jointly, or jointly and severally, interested, were those which provide that the license granted to the defendant should cover all letters patent " now owned, or hereafter to be owned," by the plaintiff or Mr. Berry, and those which give to each the right to offer for sale and to " order and pay for " duplicates of the test machine, in case the defendant should " disagree " with either as to its practicability " as a market machine."

It will be seen from this analysis that no express promise made by the defendant to either or both of the other parties to the contract was broken.   It paid the gross sum of $10,000

to the plaintiff, and instead of one test machine, it caused three to be made, but they were not marketable, and Mr. Berry, although he tried for two years with every facility that he required, failed to make a marketable machine.   It offered to make as many machines as the plaintiff or Mr. Berry would order and pay for, but no order appears to have been given. After paying the entire expense of experimenting for two years, with no practical result, it refused further facilities in that regard, but still offered to permit Mr. Berry to continue at his own expense, aside from his salary which was paid for the entire period covered by the contract.   He makes no claim that the defendant has failed to keep its agreement so far as he personally is concerned.   There was no express agreement on the part of the defendant, with either of the other parties, to furnish Mr. Berry the means of experimenting, either during the period of the contract, or for any shorter time.   Whatever agreement was made in relation to the employment of Mr. Berry, or as to the work he should do, or the object thereof, was, by the form of the agreement, confined to him personally, and as he is not a party to the action, even if there had been a violation as to him, it would be immaterial in this controversy between the other parties to the contract. Assuming that there was an implied contract between Mr. Berry and the defendant that it was to furnish him with whatever he needed in order to perfect the machines, the plaintiff can take no advantage of it, for it has no interest in stipulations, whether express or implied, made with Mr. Berry only.   The language of the contract, however, does not admit of any such inference, even as to him, for he was not employed simply to perfect the machines, but to do other services in the way of supervision and superintendence under the direction of defendant's officers.   The covenant relating to his employment distinctly provides for two kinds of service.   He was employed " in order to perfect the harvester and binders   *   *   *   *   *   *   *and* to do such other services," by way of supervision, as he could upon the defendant's request.   He agreed to " faithfully perform such service,"

which included both kinds. The contract, therefore, was not exclusively for experiments but for that and other kinds of service in the discretion of the defendant. If the plaintiff wished that Mr. Berry should be employed by the defendant for experimental work only and furnished by it with all facilities for effective experiments, it should have insisted upon a stipulation to that effect in its favor and for its advantage. The fact that it did not do so, and that the contract is silent upon the subject, is a complete answer to this action. Even upon the assumption that the contract contemplated the furnishing of facilities for experimenting to a reasonable extent and for the benefit of the plaintiff, no breach was shown, for it was not until after three worthless machines had been made and discarded, and two years wasted in useless experiments that the defendant, regarding the project as hopeless, refused to be to any further expense, aside from shop room and the payment of Mr. Berry's salary. The argument that the defendant showed by its conduct that it understood the contract to include the payment of the expense of experimenting, is of slight force, when considered in connection with the right expressly given to put Mr. Berry to work at perfecting the machines or rendering other services. The defendant did not agree with any one to make the machine a success, nor to continue the experiments during the life of the contract. It made no promise to the plaintiff that it would employ Mr. Berry for its benefit, and if it had refused to pay him his salary after causing one machine to be made under his direction, it is difficult to see upon what ground the plaintiff could have claimed a breach as to itself, for it was entitled to no part of his compensation. The plaintiff sues for the breach of a contract that the defendant never made, either expressly or by implication, and the direction of a verdict against it was, therefore, correct.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.