## LAWTON REFINING CO. v. AMERADA PETROLEUM CORPORATION et al.

No. 13969—Opinion Filed Nov. 25, 1924.

1. **Contracts — Oil and Gas — Contracting Pipe Line as Agent of Buyer of Oil.**

Where the plaintiff, a pipe-line company, makes a contract with a purchaser of crude oil, to receive, transport, and load into the buyer's tank cars, for a pipeage charge to be paid by such buyer, a certain quantity of crude oil purchased from an oil producing company, the pipe-line company is the agent and carrier of the buyer.

2. **Same—Obligation of Seller to Deliver to Pipe Line — Effect of Default in Payments by Buyer.**

Where a producer of crude oil enters into a contract with an oil buying company to deliver into the pipe line of a carrier employed by the buyer, certain quantities of crude oil to be paid for at times stated in the contract of sale and purchase, and the buyer defaults in making the agreed payments, the selling company is released from its obligation to deliver into the carrier pipe line other quantities of oil in performance of the contract of sale and purchase.

3. **Same — Damages to Pipe-Line Company from Nondelivery by Seller—Liability.**

Where a crude oil producing company enters into a contract of sale and purchase of crude oil with an oil buying company, and a part of the contract is that the oil be delivered into the pipe line of the carrier employed by the buyer, and that the buyer pay the seller for oil received, and the buyer defaults in making the agreed payments, and the seller, for that reason, refuses to deliver more oil, and the carrier, pipe-line company, brings suit against the seller for damages estimated upon a basis of what it would have earned if the contract of the seller and buyer had been carried out, before the carrier is entitled to recover such alleged damages from the seller it is incumbent upon the carrier, plaintiff, to show that the seller owed the plaintiff some duty in connection with the delivery of the oil which the seller had breached, occasioning the damages; otherwise the claim for such damages cannot be maintained.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Stephens County; Cham Jones, Judge.

Action by the Lawton Refining Company against the Amerada Petroleum Corporation and Choate Oil Corporation. Judgment for defendant Amerada Petroleum Corporation against the plaintiff. Plaintiff appeals. Affirmed.

Parmenter & Parmenter, for plaintiff in error.

Robinson & Mieher, for defendant in error Amerada Petroleum Corporation.

Opinion by SHACKELFORD, C. The plaintiff in error was the plaintiff below, and the defendant in error Amerada Petroleum Corporation was a defendant. These parties will be designated herein as plaintiff and defendant, as they appeared in the trial court.

The plaintiff is a pipe-line company operating a pipe line for the transportation of crude oil in the vicinity of Stephens county, Okla: The defendant is an oil producing company, producing oil from wells in Stephens county. The Choate Oil Corporation was a crude oil buying company. Negotiations were begun between the defendant, Amerada Petroleum Corporation, and the Choate Oil Corporation, which led to a contract being made in writing in which the defendant agreed to sell and the Choate Oil Corporation to buy, 1,500 barrels of crude oil per day, for four months. Before the contract was completed the defendant desired to be assured that the buying company had pipe-line facilities for carrying the oil. The buying company, therefore, made a contract with the plaintiff, by which it employed the plaintiff to carry such crude oil as it should purchase from the defendant, in which contract the buying company agreed to pay the plaintiff ten cents per barrel for carrying and loading the oil into the purchaser's tank cars. The contract of sale and purchase between the defendant and the Choate Oil Corporation was then completed and a copy of the contract made with the carrier (plaintiff) was attached thereto as exhibit "A." In the sales contract it was agreed that the crude oil should be piped through the pipe line operated by the plaintiff. The sales contract was accepted by the plaintiff by placing at the foot thereof the following indorsement: "The terms and conditions of the above contract are hereby accepted and agreed to as to piping and transportation of the crude," signed, "Lawton Refining Company, by J. R. Travis, President." After considerable oil had been delivered into the pipe line by the defendant, carried by the plaintiff, and received by the purchasing company, the purchasing company breached its contract by failing to pay the defendant for the crude oil; and defendant refused to deliver more oil into the pipe line because of the breach of the contract by such purchasing company. The plaintiff brought suit against the defendant and the Choate Oil Corporation for damages estimated on a basis of ten cents per barrel on the amount of crude oil not delivered to the carrying line by the defendant; and breach of the carrier contract is alleged in support of the claim of right to recover such damages. The amount of damages is alleged to be the sum of $15,000. After the issues were joined the cause was tried to the court, resulting in a judgment for plaintiff against the Choate Oil Corporation for the sum of $13.284.41; and a judgment in favor of the defendant Amerada Petroleum Corporation against the plaintiff for costs, and denying the plaintiff's right to recover damages as against the Amerada Petroleum Corporation. The plaintiff appeals from all that part of the judgment in favor of the defendant Amerada Petroleum Corporation and against the plaintiff; and presents as error that the judgment is not sustained by the evidence: or, in other words, the evidence adduced at the trial warranted a judgment in favor of the plaintiff and against the Amerada Petroleum Corporation for the amount which the plaintiff would have earned had the balance of the oil been piped through its pipe line.

The contract between the plaintiff and the Choate Oil Corporation, the purchasing company, was put in evidence. It was agreed in this contract that plaintiff should receive from the defendant Amerada Petroleum Corporation, into its pipe line, 1,500 barrels of crude oil per day, for four months, and transport the same and load it into the buying company's cars, limited, however, to the amount which the defendant should deliver into the plaintiff's pipe line. It is further agreed in the contract that the buying company should pay the plaintiff ten cents per barrel to receive, transport, and load the oil into its tank cars. In the contract it is agreed by plaintiff to indorse acceptance upon the contract of sale and purchase made between the defendant and the Choate Oil Corporation, in so far as such contract was affected by the shipping agreement. The contract of sale and purchase was put in evidence. It was made between the defendant, the seller, and the Choate Oil Corporation, the buyer. In this contract the one company agreed to sell and the other company to buy 1,500 barrels of crude oil per day for four months, the buyer to pay the seller

at stated times provided in the contract, for the oil received; and the parties agreed that the oil should be shipped through the plaintiff's pipe line. No reference is made in this contract to payment of pipe-line charges. This contract was accepted by the plaintiff by an indorsement at the foot of the contract as hereinabove stated. Thus, we find that plaintiff had entered into a contract with the buying company to receive, transport, and load crude oil to be delivered to it by the defendant, consigned to the buying company, up to the amount of 1,500 barrels per day for four months at a charge for transportation and loading of ten cents per barrel; but was under no obligation to deliver to the buyer any more oil than the seller turned into the pipe line; and the transportation and loading charge to be paid by the buying company. The seller was under contract with the buyer to deliver through the plaintiff's pipe line, 1,500 barrels of crude oil per day for four months, and the buyer was under contract to accept that amount of oil through the plaintiff's pipe line, and pay the seller at certain stated times fixed in the contract. The plaintiff accepted this contract in so far as the transportation of the oil was concerned. The further proof in the case tends to show that after several thousand barrels of oil had been delivered through the plaintiff's pipe line as provided in the contracts, the buying company breached its contract by failing to make the payments for the crude oil as provided in the sale and purchase contract, and the seller declined to deliver any more oil into the plaintiff's pipe line for the buying company. It seems from the evidence that there was no contractual relation between the selling company and the plaintiff so far as the transportation charges were concerned. The defendant, the **seller, had agreed** with the buyer to turn the crude oil into the plaintiff's pipe line to the amount of 1,500 barrels per day for four months, and the plaintiff had agreed to accept that amount for the buying company. The selling company, defendant, was under obligation to deliver the oil so long as the buying company performed its part of the contract by paying for the oil as stipulated in the contract. When the buying company breached the contract by failing to pay as stipulated, the selling company, defendant, was under no further obligation to deliver oil into the plaintiff's pipe line to be carried to the defaulting buyer. The selling company had contracted to deliver oil to the specified amount so long as the payments therefor were made, but not beyond that, and was not under contract to pay the

transportation charges. The effect of the contract between the plaintiff and the buying company was to make the plaintiff, the carrier, the agent of the buyer and not of the seller. All the obligation the seller, defendant, owed to the plaintiff was to deliver into the plaintiff's pipe line such oil as it might ship to the buyer under the contract of sale and purchase. When the buyer breached its contract by failing to pay for the crude oil as was agreed in the contract, the seller was released from its obligation to perform its part of the contract, by delivering the oil into the plaintiff's pipe line. When the buyer failed to perform its part of the contract, there was no further obligation upon the part of the seller, defendant, to perform its part of the agreement. When the seller was no longer under obligation to the buyer, any obligation it owed to the plaintiff had also ceased. It seems that at all times the seller, defendant, was ready, willing, and able to deliver oil according to the agreement made with the buyer, but was under no obligation to ship oil which would not be paid for. The fault was not with the seller. The breach existed upon the part of the buyer and not upon the part of the seller. It was the buyer who had contracted to pay the transportation charges. The seller was under no obligation to pay transportation charges, even on oil which was transported, and certainly could not be held to pay damages amounting to the transportation charges on such part of the 1,500 barrels per day for four months, as was not transported. As between the plaintiff and defendant there was no promise made by defendant to plaintiff, other than to ship such part of the 1,500 barrels per day for four months, through the pipe line of the plaintiff, as should be shipped. It is true that the defendant had agreed to ship the buyer 1,500 barrels per day for four months; but this agreement was conditioned upon the buyer paying for the oil, as stipulated in the contract between the seller and the buyer. When the buyer failed to perform, the seller was no longer required to deliver the oil into the plaintiff's pipe line. When the buyer failed to pay for the oil according to its agreement to pay, the buyer could not require the defendant to ship more oil. For the plaintiff to successfully maintain its claim for damages against the defendant, the seller, it is necessary for plaintiff to show that defendant had breached a promise made to plaintiff, or that defendant owed the plaintiff some duty which had been breached, resulting in the damage claimed. No promise was made by defend-

ant to plaintiff to pay for transportation. of the oil; and no promise was made by defendant to plaintiff to deliver oil except such as was contained in the sale and purchase contract made between defendant and the buying company. When the buyer breached the contract of purchase by failing to pay as stipulated, the seller could no longer be required to deliver the oil. It was released from any contract made to deliver the oil. Then, the plaintiff's right to recover against defendant cannot be based upon any promise made by defendant to it. It is plain from these contracts that defendant owed no duty to plaintiff other than to ship through its pipe line such amounts of oil as should be delivered to the buyer under the contract of sale and purchase to which the plaintiff had agreed by its acceptance. It seems that defendant had not breached such duty. All of the oil delivered by defendant to the buyer was shipped through the plaintiff's pipe line. So, it appears that there was neither a breach of contract upon the part of the defendant, nor had defendant breached any duty owing to plaintiff.

The plaintiff contends here that the instruments amounted to a three-way or tripartite contract; and that the failure to perform made both the defendant and the oil buying company liable to it for money damages, measured by what it would have earned if the contract had been carried out. Such contention is not supported by the record. The plaintiff had made a contract with the oil buying company to receive, transport, and deliver such oil as the buyer should procure from the defendant. The defendant was not interested in the transportation further than to know that the buyer had a means of taking the oil. The seller, defendant, and the buyer had a contract by which one agreed to sell and the other to buy and pay for certain oil. The plaintiff, pipe-line company, was not interested in the purchase and sale of the oil; but was interested only in receiving, transporting, and delivering the oil for the buyer. No such conditions existed under the contract presented for consideration as would make both the buyer and seller liable to plaintiff for damages, when the buyer alone had breached the contract.

In Berry Harvester Company v. Walter A. Wood Mowing & Reaping Machine Company (N. Y.) 46 N. E. 952, the court had occasion to examine a contract in which three parties were interested. The court said:

"Whether the right or privilege conferred by the promise of one party to a tripartite contract belongs to one or both of the other contracting parties depends upon the intention as gathered from the words used, read, so far as they are ambiguous, in the light of surrounding circumstances. Every party to such a contract is bound only to the extent of the promises made by him, and any party thereto may insist upon the performance of every promise made to him, or for his benefit, by the party or parties who made it. The mere fact that there are three parties to the agreement does not enlarge the effect of any promise, except as it may extend the advantage to two persons instead of one, where that is the intention. When the promise is to two jointly, a single act of performance satisfies it; but when it runs to two severally there are two promises in fact, and each must be performed. It will be observed that the stipulations in the contract before us are not all common to the three parties. While the defendant is interested in every stipulation, the interests of the others are mainly severed. The defendant covenanted with the plaintiff as to certain things, with Mr. Berry as to others, and with both as to others still. This is the form of the contract, which is not ambiguous. The covenants in favor of the plaintiff were supported by a consideration furnished by it only, while those in favor of Berry rest upon a consideration flowing from him only. The covenants in favor of plaintiff and Berry jointly, or jointly and severally, depend for their consideration upon the separate promises of each. The rights conferred, whether joint, or joint and several, depend on the terms of the contract. Where a several right only is conferred upon the plaintiff, Mr. Berry is not interested in it, and where a several right is conferred upon Mr. Berry, the plaintiff has no interest in that."

The defendant here was bound to the buyer by the contract, to deliver oil so long as the buyer made the prescribed payments, and no further. So far as the plaintiff was concerned the defendant was under the duty and obligation to deliver through the plaintiff's pipe line such oil as was required to carry out the contract of sale. When default was made by the buyer the defendant's obligation to deliver oil ceased. Any duty which the seller owed the plaintiff was at an end.

This was the view of the matter taken by the trial court, and the record amply sustains such view. There is no conflict in the evidence. The evidence is all one way. The oral testimony that the buying company had breached the purchase and sale contract was undisputed. The defendant was under no promise and owed no duty to the plaintiff except to deliver through the plaintiff's pipe line oil in compliance with its contract of sale. The breach of the buying

company relieved the seller of the obligation to deliver the oil. The plaintiff's claim for damages against the defendant, under the circumstances presented, cannot be maintained.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.