**KRANZE v. CINECOLOR CORP.**

United States District Court
S. D. New York.

April 12, 1951.

Emil K. Ellis, New York City, for plaintiff, Emil K. Ellis, New York City, Abraham J. Heller, Brooklyn, N. Y., Jonas Ellis, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant, Peter H. Kaminer, Elliott E. Vose, New York City, of counsel.

## McGOHEY, District Judge.

This is an action on an employment contract. Defendant moves for summary judgment and to vacate plaintiff's notice of examination. Since the former is granted, the latter need not be decided.

The contract, signed by all three parties, is set out in an appendix.

Plaintiff's claim is that the defendant is liable for the payment of salary alleged to be due under the contract. The complaint is based on the contract as it stands. It is not claimed that it is invalid or the result of fraud or mistake. Nevertheless the plaintiff asserts that the contract is ambiguous as to defendant's liability for salary and that parol evidence is necessary to remove that ambiguity. This evidence, he argues, will present a triable issue of fact.

But "where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law, and parol evidence is not admissible as an aid in interpretation; no trial is neces-sary to determine the legal effect of the contract." [1]

"The intention of the parties is found in the language used to express such intention. * * * If the court finds as a matter of law that the contract is un-ambiguous, evidence of the intention and acts of the parties plays no part in the decision of the case. Plain and unam-biguous words, undisputed facts, leave no question of construction except for the court." [2]

There is no ambiguity in this con-tract. Classics, and only Classics, is ob-ligated to pay salary. Defendant's only obligation is stated in the stock option provisions in paragraph "7." That part of paragraph "7" which reads "All other provisions of this agreement, however, shall continue in full force and effect, ir-respective of whether or not such approval can be obtained," creates no ambiguity. It means only that failure to obtain such ap-proval shall not impair the respective rights and obligations of plaintiff and Classics set out in the rest of the contract. Plaintiff urges other specified ambiguities, but I am not persuaded that they exist.

Where, as here, two or more parties to a contract promise separate per-formances, each party is bound only for the performance he promised.[3] Since de-fendant clearly did not promise to pay plaintiff's salary, there is no basis for a claim against it and summary judgment must be granted.

Settle order.

## Appendix

"Agreement made this 19th day of De-cember, 1947, by and between Film Classics, Inc., a New York corporation, herein-after referred to as 'Classics', Bernard G. Kranze, hereinafter referred to as 'Kranze', and Cinecolor Corporation, a California

---

1. General Phoenix Corporation v. Cabot, 300 N.Y. 87, 93, 89 N.E.2d 238, 241.

2. Brainard v. New York Central R. Co., 242 N.Y. 125, 133, 151 N.E. 152, 154, 45 A.L.R. 751; see Hotchkiss v. National City Bank, D.C.S.D.N.Y., 200 F. 287, 293, affirmed 2 Cir., 201 F. 664, affirmed 231 U.S. 50, 34 S.Ct. 20, 58 L. Ed. 115.

3. Berry Harvester Co. v. W. A. Wood Mowing & Reaping Mach. Co., 152 N.Y. 540, 46 N.E. 952; In re Roos' Estate, 132 Misc. 335, 230 N.Y.S. 332; Restatement, Contracts, § 113.

corporation, hereinafter referred to as 'Cinecolor.'

"The parties agree as follows:

"1. Classics will employ Kranze to perform the duties and render the services hereinafter provided, and Kranze will faithfully and diligently perform said duties and render said services, for a period commencing January 19, 1948 and ending three years thereafter. If Classics or Kranze desires to extend this agreement for two additional years, it or he shall give written notice of such desire to the other parties to this agreement not less than ninety (90) days prior to the date when this agreement would otherwise expire. If such notice is given by both Classics and Kranze, this agreement will thereby automatically be extended for two additional years. If either Classics or Kranze fails to give such notice, this agreement will terminate three years after January 19, 1948.

"2. Classics will pay to Kranze the sum of $800 per week during the first year of his employment and $1,000 per week during the second and third years of his employment. If this agreement is extended for two additional years as hereinabove provided, Classics will pay to Kranze the sum of $1250 per week during each of such two additional years. In addition to such compensation, Classics will reimburse Kranze for such reasonable expenses as are incurred by him in the discharge of his duties to Classics, subject to the approval of the President of Classics.

"3. Kranze will be Vice President in Charge of Sales of Classics. Under the general direction and authority of the President of Classics, Kranze will be responsible for and have authority over all sales throughout the world of motion picture products owned or distributed by Classics.

"4. Kranze will be entitled to twenty-one days' vacation during each year of his employment. He can take such vacation at such time or times as he desires.

"5. During the period of his employment Kranze will devote his entire time and attention and his best efforts to the performance of his duties to Classics. During the period of his employment he will not directly or indirectly (either through stock ownership or otherwise) engage in the production, distribution or exhibition of any motion picture other than the motion pictures owned or distributed by Classics.

"6. Classics shall have the right to terminate this agreement upon thirty days' notice to Kranze in the event of any of the following contingencies:

"A. If, because of mental, physical or other disability, Kranze shall be incapable for a period of 90 days from fully performing any or all of his obligations and agreements hereunder. In this connection, Classics shall have the right to have Kranze examined at such reasonable time or times by such physician or physicians as Classics may designate and Kranze will make himself available for and submit to such examinations as and when requested.

"B. The failure, refusal or neglect by Kranze to perform any of the services required hereunder to the full limit of his ability, as, when and where directed by the President of Classics.

"C. If Kranze commits an offense involving moral turpitude under Federal, state or local laws or ordinances, or conducts himself publicly or privately in any manner which offends against decency or morality, or causes him to be held in public ridicule or scorn or causes a public scandal.

"7. Cinecolor hereby gives to Kranze the right at his option to buy ten thousand shares of the capital stock of Cinecolor at a price of six and one-eighth dollars per share. Kranze can purchase any or all of such shares at any time during the term of this agreement, but not later than January 18, 1951. Upon the termination of this agreement or at the close of business on January 18, 1951, whichever shall first occur, Kranze's right to purchase any shares not issued by Cinecolor and paid for by Kranze at such date shall expire. The obligations of Cinecolor hereunder are subject, however, to the approval of the Corporation Commissioner of the State of California of the issuance by Cinecolor

of said shares. If such approval cannot be obtained, the provisions of this paragraph shall not be effective. All other provisions of this agreement, however, shall continue in full force and effect, irrespective of whether or not such approval can be obtained.

"8. This agreement shall be binding upon any successor corporation to Classics or any corporation into which Classics may be merged or consolidated.

"9. Upon the death of Kranze this agreement shall immediately terminate."