(61 App. Div. 289.)

### ROSCOE v. SAFFORD et ux.

(Supreme Court, Appellate Division, Third Department. May 8, 1901.)

MORTGAGES—CONSIDERATION—FRAUD—MUTUAL PROMISES.

Where defendant, being requested by his father to give him a mortgage on certain realty, agreed to do so if another son would give a similar mortgage, and by agreement with the father the other son executed a mortgage at the same time defendant did, which was immediately canceled, and returned by the father, the mortgage from defendant was without consideration, procured by fraudulent misrepresentations, and void.

Appeal from judgment on report of referee.

Action to foreclose a mortgage by John M. Roscoe, as executor of Joseph Safford, deceased, against Uriah Safford and wife. From a judgment in favor of plaintiff, rendered on the report of a referee, defendants appeal. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

G. M. Palmer, for appellants.
Charles H. Holmes, for respondent.

KELLOGG, J. A perusal of the testimony which the record in this case presents must, I think, lead every unbiased mind to the conclusion that the mortgage in question was intended as a gift, and had in its inception no consideration, and its execution was induced solely by the statement of the mortgagee that another son of the mortgagee had made a like gift of a mortgage in the same amount, and sim-

ilar in all its terms. A brief statement of the material facts gives a clear insight into the transaction. The mortgagee, Joseph Safford, was the father of Uriah and Josiah. In 1891 the father gave to Uriah a deed of 100 acres of land. The year following he gave a deed to Josiah of 100 acres of other land. The two deeds are in all respects similar in form, and in each is reserved a life interest to the father and mother. For some reason, in 1894, it appears the father importuned Uriah for a mortgage upon the land so deeded,—a mortgage in the sum of $1,200, payable at the mortgagee's death, without interest,—with the result that Uriah said he was willing to do as much for his father as Josiah would, and, if Josiah would give his father a mortgage on his land for $1,200, payable at the mortgagee's death, he would. Thereupon the father informed Josiah, and said to Josiah that, if he would go through the form of signing a mortgage, to induce Uriah to believe he had complied with the condition, he would get the mortgage from Uriah, and the mortgage given by Josiah should be immediately satisfied. To this Josiah agreed, and the parties repaired the following day to a lawyer's office, when the two mortgages were made and signed; and, immediately after becoming possessed of the mortgage executed by Uriah, and without informing Uriah, the mortgagee executed a satisfaction of the mortgage given by Josiah, and delivered both the mortgage and satisfaction to him. This transaction touching the satisfaction of Josiah's mortgage, and the agreement relating to its execution, and the purpose of it, was wholly unknown to Uriah until about the time of the bringing of this action. It is plain that Uriah was moved to execute the mortgage solely because Josiah had executed one. It is plain that he understood his mortgage to be a gift, the same as Josiah's was to be a gift; that he and Josiah, having received deeds of equal acreage of land, were restoring equal sums to the estate of their father. It is also plain that this was a trick concocted by the mortgagee to secure the mortgage, knowing that in no other way could he obtain it. This was a fraudulent transaction, and the fraud practiced was not one of concealment, but an active fraud, calculated, considering the relation of the parties, to accomplish its purpose. It is no answer to say that it was a harmless deception; that Uriah could not have been benefited by any mortgage given by Josiah to his father. This is not apparent. At this time the father was 78 years of age. The two mortgages were payable at his death. He apparently had made no last will. The will shown in this case seems to have been made four years later. Uriah may have had reasonable expectations of getting his proportionate share of his father's estate whether he died intestate or otherwise, and the estate to be distributed would be $1,200 greater by reason of Josiah's mortgage. But I do not think such a consideration is any test of an actionable fraud. This was, in effect, so held in the following cases: Smith v. Countryman, 30 N. Y. 655; Hammond v. Pennock, 61 N. Y. 145; Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779. A false statement which is intended to influence another,—one calculated to influence a person under the circumstances, considering the relation of the parties, and which does in fact influence him,—constitutes a sufficient basis for a finding of fraud.

The proof of this fraud stands undisputed by any witness. Josiah and his wife, Emma, both testify to it. The defendant Uriah is asked: "Did you mortgage solely on the representations then made, with reference to the two mortgages in question, in signing and giving your mortgage?" Answer: "Yes, sir." The proof given that no money passed at the time the mortgage was given, and the total absence of any proof of any existing indebtedness to the mortgagee on the part of Uriah or Josiah, or of the existence of any claim for that sum, is also corroborative of the view that a gift was contemplated, to which Josiah was to be one-half contributor. The giving of a new deed by the father to Uriah at the date of the mortgage conveyed no more nor any better title than the deed of 1891, which Uriah then held; and the new deed was no part of any consideration for the mortgage. The fact that there was litigation of some sort pending between Uriah and the mortgagee, and at the time of or after the giving of the mortgage the mortgagee gave to Uriah a paper as follows: "Received, August 31st, 1894, of Uriah Safford, $1.00 in full of all demands, actions, and causes of action to this date. [Signed] Joseph Safford,"—does not so connect the transaction with the consideration of the mortgage as to warrant the conclusion, in view of the other testimony, that this settlement was the sole inducement to the giving of the mortgage. It does not appear that Uriah was seeking any settlement. Nor does it appear that he was at any time doubtful of his perfect defense to any claim then in suit pending. The expressed consideration of one dollar, on the evidence presented, precludes the inference that there was other consideration, or that the mortgage was the consideration. Had it been so, doubtless it would have been so expressed in the receipt. What the claims were which were involved in the litigation the record does not disclose. The only material matter it does disclose is the trick practiced upon Uriah, which influenced him to execute the mortgage; and, since this is clear and plain, it matters very little whether the result was a new and useless deed, and a receipt for disputed claims, if any such claims existed. The mortgage itself was unquestionably the fruit of a fraud, and, unless the court departs from its uniform practice of declaring such transactions void, and in this case declares falsehood to be a proper and legitimate agency in dealings between father and son, this mortgage must be treated as void, and the judgment must be set aside. The defendant has restored, or offered to restore, all he received at the date the mortgage was given, to wit, the new deed, and the receipt, and a release of anything these covered. This restitution or offer was made as soon as the fraud was discovered, viz. after the death of the father. If lapse of time has made stale any of those claims, or abated in any respect their value, the defendant is not at fault; but it may be taken as a suitable recompense to the author of the trick, and his perfect concealment of the methods used.

The judgment is reversed, the referee discharged, and a new trial granted; costs to abide the event. All concur.