**In re DACUS.**

**No. 11989.**

District Court, E. D. Tennessee.

Aug. 29, 1940.

Cecil D. Meek, of Knoxville, Tenn., for bankrupt.

W. Hoyle Campbell, of Knoxville, Tenn., trustee.

TAYLOR, District Judge.

This is before me on petition of the bankrupt to reopen and re-refer the matter to the referee to complete and correct what is claimed to be an incomplete and incorrect record, in that it fails to show the allowance of an amendment to his schedules, which, according to the contention of the bankrupt, was applied for by him on or about the 22nd day of March, 1940, and prior to the date fixed for the first meeting of his creditors. Such a petition or application for amendment is found in the files, but is not marked "filed" nor is there any order in the record before me granting the application.

Attached to Schedule A–3 is a paper marked "Amendment of March 30, 1940", and this so-called amendment contains among others the claim of the creditor here involved, that of W. T. Painter Company in the amount of $81.40.

It appears to be the practice before the referee to whom this case was originally referred, for the referee to enter an order, a copy of which is furnished the attorney for the bankrupt, and for the referee himself to enter the amended schedule on the copy in his office. It is the practice for the attorney to whom the order allowing the amendment is sent to present same to the clerk and on authority of said order to himself amend the copies lodged with the clerk.

This is not only the general practice, but appears to have been the practice employed in the instant case with respect to another amendment to the schedules pursuant to bankrupt's application therefor. On the basis of this application and order, the schedule was duly ordered amended on April 15, 1940, and a copy of this order allowing the amendment appears in the file.

It is contended that the referee actually allowed the earlier amendment, and that creditors actually received notices of the creditors' meeting and also notices of application for discharge. This does not appear of record. It is further contended by the bankrupt that the court of bankruptcy under the Chandler Act has broader powers and discretion with respect to opening and closing cases than it had under the original Bankruptcy Act. It is true that the language in the Chandler Act is different from that in the original Act, and it is also true that certain editorial comment gives support to this contention. As illustrative of such comment, there is found in the pocket part of the Title 11, Sections 1–31, incl., at page 8, a comment by George E. Q. Johnson, formerly U. S. District Judge of the Northern District of Illinois and author of Johnson's Bankruptcy Reorganizations, to the effect that: "* * For cause shown the court may reopen and close estates. There are now no restrictions as to the causes justifying the reopening. The greatest demand for this clarification arose out of the uncertainties in confirmation and final decrees in reorganizations and liquidations affecting real estate titles. Sec. 2 (8), Chapter II, 11 U.S.C.A. § 11". While the language of the Act is different, the spirit of the Act is the same. Under the old Act it was uniformly held that a former bankrupt might not have his estate reopened to list creditors not theretofore listed by him. It was almost uniformly held that estates in bankruptcy might be reopened solely to administer assets not fully administered before the case was closed.

In the instant case, the bankrupt knew that the practice and procedure was as hereinabove stated. He knew that no order had been entered by the referee allowing his first proposed amendment to his schedule A–3. It was his duty to see that the order was either granted or denied, and if improperly denied, to cause a review of the referee's action. It would cause multiplied similar applications if the court should hold that a bankrupt was justified in assuming that the referee's record showed everything done that he had applied for. The record does not justify the court in reopening the case solely to enable the bankrupt to now see that the record discloses transactions which he knew it did not disclose while it was before the referee.

I cannot establish the precedent of reopening cases to permit corrections of the

record or to permit amplifications of the record where it appears, as here, that the bankrupt, through counsel, was or should have been fully advised as to the state of the record prior to the closing of the case. The application to reopen will be accordingly denied.