LAPIS ENTERPRISES, INC., et al., Appellants, v INTERNA-
TIONAL BLIMPIE CORP. et al., Defendants, and NEW
JERSEY BANK, N. A., Respondent.

Second Department, December 31, 1981

APPEARANCES OF COUNSEL

*Harry Salvan* for appellants.

*Natter & Natter* (*Seth Natter* of counsel), for respondent.

OPINION OF THE COURT

TITONE, J.

This action arises from a business transaction in which
the individual plaintiffs, Daniel and Carol Lapidus,
through plaintiff Lapis Enterprises, Inc. (a corporation
formed by the said individuals), acquired a Blimpie fran-
chise. The Lapiduses were guarantors of an equipment
lease between Lapis Enterprises, Inc. and the defendant
Academy Leasing Corp., and, as security for their guaran-
tee, executed a second mortgage on their residence to
Academy. The equipment lease and second mortgage were

purchased by the defendant New Jersey Bank, N. A., and the bank thereupon received the monthly rental payments.

Within a year of its acquisition by the corporate plaintiff, the franchise failed and the business was closed, causing a default in payment under the equipment lease. After giving notice to all parties having an interest, an auction sale of the equipment was conducted and the equipment was sold. The bank claims that there is a deficiency between the balance due and the proceeds of the sale.

On February 5, 1979, the individual plaintiffs filed voluntary petitions in bankruptcy in the United States District Court for the Eastern District of New York. The bank filed a proof of claim in each proceeding. Schedule A-2 of each petition acknowledged that the second mortgage was executed by the individual plaintiffs and that such mortgage was security for a corporate loan. Item 8 of Schedule B-2 requires the petitioner to set forth the estimated value of any "contingent and unliquidated claims" he may have. The petitions of the individual plaintiffs were void of any claim with respect to rescission of the second mortgage.

During the course of the bankruptcy proceedings, the trustee in bankruptcy requested and was granted an order authorizing him "to disclaim title to and to abandon the [subject] property" in view of the first mortgage held by Chase Manhattan Bank and the second mortgage held by New Jersey Bank, N. A. By orders dated April 12, 1979, the individual plaintiffs were discharged and released from personal liability with respect to all of their dischargeable debts.

The plaintiffs thereafter commenced the present action against multiple parties. With respect to the bank, the plaintiffs assert three causes of action, the fifth, sixth and seventh. The fifth cause of action alleges, *inter alia,* that an attorney and representative of International Blimpie Corporation recommended defendant Academy Leasing Corp. as the finance company to be used, representing to plaintiffs that Academy was "most reliable and honest" and was part of the Blimpie franchise system when, in fact, Academy had been used by Blimpie and the attorney in 20 other transactions, all of which resulted in litigation.

The fifth cause of action also alleges that "on November 7, 1977, and [on] no other date", Academy had the individual plaintiffs sign "papers", that amongst those "papers" were an hypothecation agreement, a second mortgage, an equipment lease, and a guarantee, that the hypothecation agreement is void by reason of its illegality, that the equipment lease and the second mortgage are subject to rescission by reason of Academy's overreaching, and that the failure to explain the guarantee to the individual plaintiffs constitutes fraud rendering the guarantee void.

The sixth cause of action alleges that the second mortgage is invalid on the grounds that (a) Academy was only a nominee of the defendant bank, which is unauthorized to do business in New York, (b) the mortgage was set for $30,000 in installments of $727.50 for 60 months, (c) the individual plaintiffs never intended to give a mortgage on their dwelling as security for any loan, and (d) the mortgage depended on conditions outside the mortgage.

In the seventh cause of action, it is alleged that Academy and the bank, on the basis of a void equipment lease, seized possession of $3,000 worth of the corporate plaintiff's personal property, thereby converting it to their own use.

By notice of motion dated December 31, 1979, the bank moved to dismiss the complaint as against it on the grounds that (1) since it was a national banking association with its principal place of business in New Jersey and no offices in New York, the court lacked personal jurisdiction, (2) the complaint failed to state a cause of action, and (3) the causes of action claimed are barred by the doctrine of *res judicata*. The plaintiffs cross-moved for summary judgment. Special Term granted the bank's motion to dismiss on the ground of lack of jurisdiction, and denied the plaintiffs' cross motion. An appeal was taken and, on November 24, 1980, this court modified Special Term's order to the extent of denying the bank's motion to dismiss on the ground of lack of jurisdiction upon our holding that the action was "local in nature" and jurisdiction existed. The order insofar as it denied plaintiffs' cross motion for summary judgment was affirmed (*Lapis Enterprises v International Blimpie Corp.*, 78 AD2d 898).

The bank moved to renew its prior motion to dismiss. On March 24, 1981, an order was entered granting renewal and dismissing the complaint as to the bank.

The first issue raised by these facts is whether, in light of the prior proceedings in bankruptcy, the individual plaintiffs are barred from bringing this action, with respect to the bank, on the grounds of *res judicata* and lack of standing.

In *Landmark Fin. Corp. v Cox* (2 Bankruptcy Reports 739), an order of abandonment was issued at the first meeting of creditors in light of a certain loan contract. Later in the proceeding, the court, *sua sponte,* raised the issue of the loan's validity and held that the loan was void. In so holding, the court stated (p 741): "'[B]efore *res judicata* can be invoked, a valid judgment, usually in another action, between the same parties or their privies must have adjudged some matter with finality.' * * * The summary abandonment of collateral security on burdensome property does not meet these criteria. It is not a final judgment, rather its purpose is to dispose of property 'which is either worthless, or overburdened, or for any other reason certain not to yield any benefit to the general estate.' * * * Thus, in entering an Order of Abandonment, the Bankruptcy Court performed an administrative function and did not finally adjudicate the validity of the loan contracts. Accordingly, the Bankruptcy Judge's action at the First Meeting of Creditors did not preclude late consideration of the validity issue." This is equally applicable to the case at bar and, therefore, the consideration of the validity of the second mortgage by this court is not barred by the doctrine of *res judicata*.

While the individual plaintiffs are not barred on the basis of *res judicata* from bringing this action, they may be barred for lack of standing. Under paragraph (6) of subdivision (a) of section 70 of the former Bankruptcy Act (US Code, tit 11, § 110, subd [a], par [6], repealed by Public Law 95-598, 92 US Stat 2549), the bankrupt's title to "rights of action arising upon contracts, or usury" vests in the trustee in bankruptcy (see 4A Collier, Bankruptcy [14th ed], par 70.28). As noted above, a trustee, with the approval of the Bankruptcy Court, may elect to abandon

and disclaim any property or chose in action which is either worthless, overburdened or for any other reason certain not to yield any benefit to the general estate (4A Collier, Bankruptcy [14th ed], par 70.42[2]; *Oldmixon v Severance,* 119 App Div 821, 823). Upon such abandonment, title revests in the bankrupt (see *Rosenblum v Dingfelder,* 111 F2d 406; *Kaplan v Ringland,* 66 Misc 2d 448).

As the doctrine of abandonment presupposes knowledge on the part of the trustee (*Sessions v Romadka,* 145 US 29), the trustee cannot be said to have abandoned a right of action if he was not aware of its existence (*First Nat. Bank v Lasater,* 196 US 115, 118; *Hermsmeyer v A.L.D., Inc.,* 239 F Supp 740; *Grauman v City Co. of N. Y.,* 113 F Supp 437) and "the cause of action [remains] vested in the trustee in bankruptcy in the absence of an affidavit from the [bankrupt] that the alleged asset had been scheduled as an asset or had been brought to the attention of the trustee and that the trustee had elected to reject it as an asset" (*Schildkraut v Light,* 269 App Div 990, affd 296 NY 1036). The Court of Appeals, in *Stephan v Merchants Collateral Corp.* (256 NY 418, 422), adopted the reasoning of *First Nat. Bank v Lasater* (196 US 115, 119, *supra*) to explain the rationale for the above rule: "It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property * * * If the claim was of value (as certainly this claim was according to the judgment below) it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts and still assert title to the property."

The plaintiffs argue that as the fraud was not discovered until after the proceeding in bankruptcy had been closed, they are not barred from bringing this action. However, accrual of the cause of action will determine the plaintiffs' standing to bring this action, for if the cause of action accrued prior to the close of the bankruptcy proceedings it must be treated as a newly discovered and unadministered asset of the estate in bankruptcy and application must be

made to the Bankruptcy Court to reopen the case pursuant to Bankruptcy Rule 515 (see *Tuffy v Nichols,* 120 F2d 906, cert den 314 US 660; *Matter of Mirsky,* 124 F2d 1017, cert den 317 US 638; *Matter of Dacus,* 34 F Supp 841).

It is well settled in New York that a mortgage may be canceled where there has been fraud or misrepresentation in the procurement of the mortgage (see *Thaw v Schwartz,* 278 App Div 948, affd 303 NY 678; *Cole v Skinner,* 275 App Div 984; *Roscoe v Safford,* 61 App Div 289; *Crowe v Malba Land Co.,* 76 Misc 2d 676; *French v Row,* 77 Hun 380; *Samuels v Century Fed. Sav. & Loan Assn.,* 36 Misc 2d 202, 203). Similarly, a mortgage may not be enforced if the mortgagor did not intend to sign the instrument as a mortgage (*Ball v Petrocy,* 226 App Div 347; *Blum v Hoffkins,* 210 App Div 748, affd 244 NY 531). A complaint alleging either constructive fraud or actual fraud will sustain a cause of action to cancel a mortgage (*Quadrozzi Concrete Corp. v Mastroianni,* 56 AD2d 353, app dsmd 42 NY2d 824).

Additionally, although the bank is not alleged to have itself perpetrated the fraud, it is well settled that an assignee of a mortgage takes it subject to the equities attending the original transaction (*Trustees of Union Coll. v Wheeler,* 61 NY 88). Thus, the assignee takes the mortgage subject to the mortgagor's action for fraud (*Hill v Hoole,* 116 NY 299; *Siebros Fin. Corp. v Kirman,* 232 App Div 375; *Sparling v Wells,* 24 App Div 584). This is true even where the assignee is a bona fide purchaser for value. "A mortgage like a note, payable to the payee only, is not negotiable, and is always subject to the defense existing between the original parties" (*Ingraham v Disborough,* 47 NY 421, 423; see, also, *Beck v Sheldon,* 259 NY 208).

Under New York law, a cause of action for constructive fraud accrues at the time of commission while a cause of action for actual fraud accrues upon discovery (see *Curry v Chollette,* 57 AD2d 604; *Quadrozzi Concrete Corp. v Mastroianni,* 56 AD2d 353, *supra*). Thus, the time of plaintiffs' discovery is significant and will allow the plaintiffs to bring an action against the bank only to the extent the cause of action sufficiently sets out actual fraud perpetrated by the bank's assignor, Academy.

As a general rule "[p]leadings should be liberally construed and a complaint should not be dismissed for failure to state a cause of action when a cause can be discerned in the facts alleged, no matter how poorly those facts are stated" (*Greschler v Greschler,* 71 AD2d 322, 325, mod on other grounds 51 NY2d 368). However CPLR 3016 (subd [b]) states specifically that "[w]here a cause of action * * * is based upon misrepresentation [or] fraud * * * the circumstances constituting the wrong shall be stated in detail", and thus bare allegations of fraud without any allegation of the details constituting the wrong are not sufficient to sustain a cause of action (see *Knowles v City of New York,* 176 NY 430; *Gill v Caribbean Home Remodeling Co.,* 73 AD2d 609; *Biggar v Buteau,* 51 AD2d 601; *Meltzer v Klein,* 29 AD2d 548; 3 Weinstein-Korn-Miller, NY Civ Prac, par 3016.04).

Conspicuously absent from the plaintiffs' fifth and sixth causes of action are details as to the circumstances surrounding the fraud. The bare allegations that the individual plaintiffs never intended to give a mortgage on their dwelling as security for any loan are insufficient to state a cause of action for fraud, constructive or actual. Thus, dismissal of the plaintiffs' fifth and sixth causes of action is required. With respect to the seventh cause of action, the corporate plaintiff argues that as execution of the equipment lease was fraudulently induced and therefore void, the subsequent seizure by the defendants constitutes conversion. Clearly this cause of action is premised upon the fraud alleged in the fifth and sixth causes of action and it, too, must be dismissed.

Accordingly, the order of Special Term dismissing the plaintiffs' complaint with respect to the bank should be affirmed.

HOPKINS, J. P., DAMIANI and MANGANO, JJ., concur.

Order of the Supreme Court, Nassau County, entered March 24, 1981, affirmed, with $50 costs and disbursements.