In re APPONLINE.COM, INC., Island Mortgage Network, Inc., et al., Debtors.

Countrywide Home Loans, Inc., Plaintiffs,

v.

Randy St. Louis, Island Mortgage Network, Inc., HSA Residential Mortgage Services of Texas, Inc., and Alan M. Jacobs, Chapter 11 Trustee Defendants.

Bankruptcy Nos. 800–84646–478, 800–84687–478, 800–85007–478, 801–85195–478 to 801–85202–478. Adversary No. 802–8005–478.

United States Bankruptcy Court, E.D. New York.

Feb. 24, 2003.

Zinker, Gelfand & Herzberg, LLP, Smithtown, NY, By Jeffrey Herzberg, for Countrywide Home Loans, Inc.

Shearman & Sterling, New York City, By James L. Garrity, Jr., George J. Wade and Donna Marie Werner, for HSA Residential Mortgage Services of Texas, Inc.

King, Adang, Arpey, Maruccio & Naughton, Saratoga Springs, NY, By John W. Arpey, for Randy St. Louis.

Kramer, Levin, Naftalis & Frankel, LLP, New York City, By P. Bradley O'Neill, for Alan Jacobs, Chapter 11 Trustee.

## MEMORANDUM DECISION

DOROTHY EISENBERG, Bankruptcy Judge.

Plaintiff Countrywide Home Loans, Inc. (the "Plaintiff" or "Countrywide") brought an adversary proceeding pursuant to Section 541 of the Bankruptcy Code against Randy St. Louis ("St. Louis"), AppOnline.com, Inc. ("AppOnline"), Island Mortgage Network, Inc. ("IMN"), HSA Residential Mortgage Services of Texas, Inc.

("RMST"), National Settlement Services Corp. ("NSS"), and Alan M. Jacobs, the Chapter 11 Trustee (the "Trustee") (collectively, the "Defendants") for a declaratory judgment and rescission of a contract of sale of real property from Countrywide to St. Louis. RMST, the subsequent transferee of the note and mortgage granted by St. Louis to finance the sale, filed an Answer with counterclaims, seeking a judgment declaring that RMST is a holder in due course of the note and mortgage encumbering the real property in question, and a declaration that Countrywide's interest in the real property, if any, is subject to the priority interest of RMST in the note and mortgage. Countrywide filed an Answer to the counterclaims of RMST. The Trustee and St. Louis also filed Answers to the Amended Complaint.

The Plaintiff moved for summary judgment[1] ( the "Motion") asserting that there are no material facts in dispute and that Countrywide is entitled to judgment as a matter of law declaring that the mortgage debt due and owing from St. Louis to IMN is limited to the amount of mortgage monies actually advanced by IMN to or on behalf of St. Louis and seeking an order of rescission of the deed from Countrywide to St. Louis. RMST filed a cross-motion ("Cross–Motion") claiming that it is a holder in due course of the note and mortgage and that its rights in and to the real property are superior to any rights Countrywide may assert in and to the real property. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52, as made applicable herein by Fed. R. Bankr.P. 7052.

## BACKGROUND

*The Parties.*

1. RMST is a Delaware corporation. At the time of the transaction in question, RMST was in the business of purchasing, or lending money in exchange for a security interest in, mortgages from mortgage originators. Since May 1997, to the date of the transaction in question, RMST purchased loans from IMN or lent money to IMN to fund loans in exchange for a security interest in those loans pursuant to Purchase Agreements (the "Mortgages Purchase Agreement") between the parties. Pursuant to the Mortgages Purchase Agreement, RMST purchased or loaned money to IMN in exchange for a security interest in mortgage loans originated by IMN to finance the purchase or refinancing of owner-occupied and investor-owned one-to four-family residential dwellings. For the purposes of the Motion and Cross–Motion, the Court finds that RMST had a perfected security interest in the note and mortgage in question.[2]

2. Countrywide is in the business of providing home loans, refinancing, home equity lines of credit and other financial products. In this adversary proceeding, Countrywide was the owner of the Proper-

---

1. Earlier in this proceeding, Countrywide moved for judgment on the pleadings and dismissal of RMST's counterclaims which motion was denied by Order dated June 27, 2002, without prejudice to either side to file further dispositive motions.

2. In its Memorandum of Law in Reply to the Trustee's Opposition to RMST's Cross–Motion, RMST concedes that for purposes of this Motion and Cross–Motion, RMST can be treated as holding a security interest in the note in question. By treating RMST in this fashion, the Court will not entertain the issue of whether RMST purchased or financed the transaction, which would require additional discovery and findings of fact. In any event, the treatment of RMST as either a secured creditor or purchaser of the note in question does not affect the outcome of this decision.

ty (as defined herein) at the time of its purchase by Mr. St. Louis.

3. NSS is a Delaware corporation which is a wholly-owned subsidiary of Action Abstract, Inc.

4. Action Abstract, Inc. Is a New York corporation and is wholly owned by Robert Knickman, a director of AppOnline.

5. Alan M. Jacobs is the Court appointed Chapter 11 Trustee of AppOnline and IMN. AppOnline is a holding company that, through its subsidiaries, engaged in the mortgage banking and brokerage business. IMN is a wholly-owned subsidiary of AppOnline.

*Prior History.*

On July 19, 2000, AppOnline and IMN filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On July 28, 2000, an involuntary bankruptcy petition was filed against Action Abstract, Inc. On July 28, 2000, this Court granted the motion of certain creditors of those debtors seeking the appointment of a trustee. The United States Trustee thereafter appointed Alan M. Jacobs as Trustee of the estates of IMN and AppOnline. On June 20, 2001, at the direction of the Trustee, a Chapter 11 bankruptcy petition was filed for NSS. Thereafter, the Court issued an Order substantively consolidating the estates of IMN, AppOnline, Action Abstract, Inc. and NSS (collectively, the "Bankruptcy Proceedings"). The Trustee has been appointed trustee in each of the Bankruptcy Proceedings.

## FACTS

Based on the facts as represented by the parties to this adversary proceeding, the Court makes the following findings. Countrywide owned a parcel of land known as 230 Fayville Road, Providence, N.Y. ("Property"). By contract of sale dated March 31, 2000, Countrywide agreed to sell the Property to Randy St. Louis for a total purchase price of $55,120.00. The contract of sale specifies that the sales proceeds are to be paid "in cash, certified check, bank draft or attorney escrow account check." (Countrywide Ex. A to Amended Complaint). St. Louis obtained a loan commitment from IMN in the amount of $49,600.00 ("St. Louis Loan"). The closing of the sale of the Property from Countrywide to St. Louis took place on June 19, 2000. At the closing, Steven Rodriguez, Esq. of the law firm of Rodriguez & Doern PLLC acted as attorney for Countrywide. The law firm of Steven D. Farer, PC, by Steven Farer, Esq., represented NSS at the closing. NSS acted as settlement agent for IMN at the closing. St. Louis executed a mortgage ("St. Louis Mortgage") to secure the transaction and a promissory note ("St. Louis Note") payable to IMN for $49,600. St. Louis tendered a number of checks to Steven Rodriguez, Esq. totaling $55,120 in payment of the purchase price for the Property. Included in these checks was a check issued by NSS in the sum of $43,598.68 payable to Countrywide (the "NSS Check"). The NSS Check was not certified. At the closing, Countrywide delivered the deed (the "Deed") to St. Louis. The Deed and the St. Louis Mortgage were recorded.

Prior to the closing of the sale of the Property, on June 16, 2000, RMST received from IMN an "offer to sell" the proposed St. Louis Loan for $49,600. On June 16, 2000, RMST accepted that offer by wiring $49,600.00 to Action Abstract, Inc., as agent to IMN. Pursuant to the terms of the Mortgages Purchase Agreement and according to IMN's instructions, IMN endorsed the St. Louis Note in blank and sent it to RMST following the closing. On June 21, 2000, RMST received the St. Louis Note and a certified copy of the St. Louis Mortgage and has been in continu-

ous possession of both during the time relevant to this adversary proceeding.

The NSS Check never cleared, and as a result, Countrywide only received approximately $11,000 toward the purchase price of the Property and St. Louis only received approximately $6,000 of the proceeds of the St. Louis Loan. According to the affidavit of Deirdre Linkletter, Vice President of Warehouse Operations of RMST at the time in question, when it took possession of the St. Louis Note, RMST had no knowledge that a stop payment order had been issued on the check issued by NSS in connection with the closing of the St. Louis Mortgage, and RMST had no notice of Countrywide's claims to the proceeds of the St. Louis Mortgage. Countrywide has produced no evidence to contradict the finding that RMST had no knowledge of such facts. Such findings are undisputed.

The St. Louis Note contains the following relevant language:

### 1. BORROWER'S PROMISE TO PAY

In return for a loan ... I promise to pay U.S. $49,600.00 ... plus interest ... to the order of the Lender. The Lender is ISLAND MORTGAGE NETWORK, INC. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 10.750 %.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month. I will make my monthly payments beginning on August 1, 2000. . . . I will make my monthly payments at 201 Old Country Road, Melville, N.Y. 11747. . . .

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $463.01.

\* \* \* \* \* \*

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

\* \* \* \* \* \*

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all Sums Secured by this Security Agreement if all or any part of

the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by law on the date of this Security Instrument.

(RMST Ex. B to Aff. of Deirdre Linkletter).

On or about August 9, 2000, approximately three weeks after IMN and AppOnline filed their petitions, Countrywide commenced a lawsuit (the "State Court Action") in the Supreme Court of the State of New York, County of Saratoga against St. Louis, NSS, Rodriguez & Doern PLLC, Stephen Rodriguez, Esq., Steven D. Farer, P.C. and Steven D. Farer, Esq. In the State Court Action, Countrywide sought, among other things, a declaratory judgment rescinding the Deed and setting aside the conveyance of the Property to St. Louis. RMST was not a party to the State Court Action.

On January 24, 2002, Countrywide commenced this adversary proceeding by service of the Amended Complaint for Turnover and Declaratory Relief (the "Amended Complaint") seeking an order, *inter alia,* (i) declaring that the Deed and the St. Louis Mortgage are not property of the bankruptcy estate, (ii) rescinding and vacating *ab initio* the Deed and the St. Louis Mortgage, and (iii) declaring that RMST does not have an interest in either the Deed or the St. Louis Mortgage.

On February 25, 2002, RMST filed an answer (the "Answer") to the Amended Complaint, asserting counterclaims seeking a judgment: (i) declaring that RMST is a holder in due course of the St. Louis Note and the St. Louis Mortgage, (ii) declaring that Countrywide's interest in the St. Louis Mortgage, if any, is subject to the priority interest of RMST in the St. Louis Mortgage and (iii) declaring that RMST is the rightful holder of the St. Louis Mortgage.

On February 19, 2002, St. Louis filed a motion for relief from the automatic stay to permit the Trustee to discharge and release any interest the estate may have upon payment of any sums due to the estate (the "Vacate Stay Motion"). On February 22, 2002, Countrywide filed papers in support of the Vacate Stay Motion so long as there would be no adverse effect on the State Court Action. On June 7, 2002, RMST filed an Objection to the Vacate Stay Motion, alleging, *inter alia,* that in granting the Vacate Stay Motion RMST's rights pursuant to this adversary proceeding would be adversely affected. Ultimately, the Vacate Stay Motion was denied by this Court.

Meanwhile, on July 22, 2002, Countrywide filed this Motion and on August 16, 2002, RMST filed the Cross–Motion. Both Countrywide and RMST have filed additional papers, as has the Trustee. Oral argument took place on September 17, 2002, during which Countrywide conceded that RMST had no knowledge that IMN failed to fund the St. Louis Mortgage at the time RMST agreed to wire funds to IMN. (9/17/02 Trans. at p. 38—39). Thereafter, the Trustee and RMST entered into a stipulation so-ordered by this Court on October 1, 2002, whereby the Trustee consented that for the purposes of this adversary proceeding, it does not contest that RMST took the St. Louis Note for value, in good faith without notice or knowledge of IMN's fraud or of any claims to the St. Louis Note and St. Louis Mortgage by any party, including those of Countrywide.

## DISCUSSION

### 1. Standard for Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Pereira v. Cogan,* 267 B.R. 500, 506 (S.D.N.Y.2001); *Lang v. Retirement Living Pub. Co., Inc.,* 949 F.2d 576, 580 (2d Cir.1991) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment will be denied where specific facts are adduced indicating a genuine issue for trial. *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. at 247, 106 S.Ct. at 2506 (1986). When the moving party meets its burden, "the opposing party must not only set forth specific facts showing there is a genuine issue for trial, but also that the disputed fact is material." *In re Royal Business School, Inc.,* 157 B.R. 932, 937 (Bankr.E.D.N.Y. 1993). However, this is not to say that the opposing party may "merely rely upon the contentions of its pleadings, but must produce significant evidence to support its position." *Id.* "Mere allegations, and denials ... do not alone establish the existence of a genuine dispute of material fact." *In re Carlisle Homes, Inc.,* 103 B.R. 524, 543 (Bankr.D.N.J.1988).

### 2. RMST's Status as Holder in Due Course

Countrywide alleges that as a matter of law, it is entitled to entry of a judgment (i) rescinding the contract of sale of the Property between itself and St. Louis, and (ii) declaring that the mortgage debt due and owing by St. Louis to IMN/RMST is limited to the amount of mortgage monies actually advanced by IMN to or on behalf of St. Louis. Countrywide asserts that this is the result whether or not RMST is deemed to be a holder in due course of the St. Louis Note, and further disputes that RMST can claim the status of a holder in due course of both the St. Louis Note and the St. Louis Mortgage. RMST asserts to the contrary that it is a holder in due course of the St. Louis Note and as a result, RMST took the St. Louis Note and the St. Louis Mortgage free from any claims by St. Louis or Countrywide, and that the St. Louis Note is enforceable for the full amount.

In order to determine the rights of the parties in question, it is essential for this Court to rule on whether RMST is a holder in due course of the St. Louis Note and, if so, the extent to which this status protects RMST from the claims asserted by Countrywide. For the purposes of determining whether RMST is a holder in due course, there are no significant facts in dispute which would prevent the Court from making such a finding at this stage. Therefore, summary judgment is appropriate on this issue.

The holder in due course doctrine is derived from the Uniform Commercial Code (the "U.C.C."). The U.C.C. adopted by New York State governs this transaction as the St. Louis Note is payable in New York. *Beadall v. Moore,* 199 A.D. 531, 191 N.Y.S. 826 (1st Dep't 1922). RMST has the burden of proving that it is a holder in due course of the St. Louis Note. *FDIC v. Giammettei,* 34 F.3d 51 (2nd Cir.1994).

In order to qualify as a holder in due course, RMST must establish by a preponderance of the evidence that it is:

i) a holder;

ii) of a negotiable instrument;

iii) who took it for value;

iv) in good faith; and

v) without notice that it is overdue or has been dishonored or of any defense against or claim to it on part of any person. N.Y.U.C.C. § 3–302(1) (McKinney 1991); *A.I. Trade Fin., Inc. v. Laminaciones de Lesaca, S.A.*, 41 F.3d 830, 835 (2d Cir.1994); and *In re Joe Sipala & Son Nursery Corp.*, 214 B.R. 281, 285 (Bankr. E.D.N.Y.1997).

*i) Holder.*

A holder is one who is in possession of an instrument "issued or [e]ndorsed to him, or to his order or to bearer in blank." N.Y.U.C.C. § 1–201(20). There is no dispute that the St. Louis Note was endorsed in blank and that RMST took possession of the St. Louis Note when it was sent to RMST. Linkletter Aff. ¶¶ 11f, 12, 13. Therefore, RMST is a "holder."

*ii) Negotiable Instrument.*

 To qualify as a negotiable instrument under the U.C.C., a document must:

(a) be signed by the maker or drawer;

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by Article 3;

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer. N.Y.U.C.C. § 3–104(1).

A review of the St. Louis Note reveals that it was signed by Randy St. Louis, and Countrywide does not contest this point. However, Countrywide alleges that as a matter of law, the St. Louis Note fails to meet the criteria set forth in subparts (b), (c) and (d) above. The Court disagrees with Countrywide for the following reasons.

 The St. Louis Note contains an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power except as authorized by Article 3 of the U.C.C. The St. Louis Note contains a promise to make monthly payments of $463.01 commencing on August 1, 2000, at fixed interest rate. The only other references to payment in the St. Louis Note are contained in Section 10, wherein a reference is made to the St. Louis Mortgage. Section 10 of the St. Louis Note also sets forth some of the conditions contained in the St. Louis Mortgage which may accelerate the amounts due under the St. Louis Note (the "Acceleration Language"). However, these references to the St. Louis Mortgage and the inclusion of the Acceleration Language in the St. Louis Note do not destroy its negotiability under New York law.

 The mere existence of a separate mortgage agreement in addition to a note does not destroy the negotiability of the note. N.Y.U.C.C. § 3–119 plainly states that the existence of "a separate agreement does not affect the negotiability of any instrument." N.Y.U.C.C. § 3–105(1) provides in part that "a promise or order otherwise unconditional is not made conditional by the fact that the instrument (c) refers to or states that it arises out of a separate agreement or refers to a separate agreement for rights as to prepayment or acceleration". N.Y.U.C.C. § 3–105 further provides that "(2) a promise or order is not unconditional if the instrument (a) states that it is subject to or governed by any other agreement; ..." The Official Commentary to N.Y.U.C.C. § 3–105 states:

3. Paragraph (c) of subsection (1) ... is intended ... to reject cases (denying negotiability) in which a reference to separate agreement was held to mean that payment of the instrument must be limited in accordance with the terms of

the agreement, and hence was conditioned by it.

\* \* \* \* \* \*

8. Paragraph (a) of subsection (2) retains the generally accepted rule that where an instrument contains such language as "subject to terms of contract between maker and payee of this date," its payment is conditional according to the terms of the agreement and the instrument is not negotiable. The distinction is between a mere recital of the existence of the separate agreement or a reference to it for information, which under paragraph (c) of subsection (1) will not affect negotiability, and any language which, fairly construed, requires the holder to look to the other agreement for the terms of payment. The intent of the provision is that an instrument is not negotiable unless the holder can ascertain all of its essential terms from its face. In the specific instance of rights as to prepayment or acceleration, however, there may be a reference to a separate agreement without destroying its negotiability. [As amended 1962].

Applicable case law indicates that each note is to be carefully reviewed to determine whether the note fits within the description of a negotiable instrument under the relevant U.C.C. provisions. *Enoch v. Brandon,* 249 N.Y. 263, 267, 164 N.E. 45, 47 (1928); *Felin Associates, Inc. v. Rogers,* 38 A.D.2d 6, 9, 326 N.Y.S.2d 413 (1st Dep't 1971); *First Nat. City Bank v. Valentine,* 62 Misc.2d 719, 720, 309 N.Y.S.2d 563, 564 (Sup.Ct. Nassau Co.1970); and *Gramatan Co., Ltd. v. D'Amico,* 50 Misc.2d 233, 234, 269 N.Y.S.2d 871, 872 (Sup.Ct. Suffolk Co.1966) ("*Gramatan*"). In this case, the Court must determine whether the reference to the St. Louis Mortgage and inclusion of the Acceleration Language destroys the negotiability of the St. Louis Note.

The Court finds that these inclusions do not destroy the negotiability of the St. Louis Note. The St. Louis Note does not state that it is "governed by" or "subject to" the St. Louis Mortgage. The St. Louis Note clearly spells out the dollar amount owed by the borrower and includes a sum certain to be paid. The reference to the St. Louis Mortgage for additional protections would not lead the holder of the St. Louis Note to believe that because of something contained in the St. Louis Mortgage, the note holder might be precluded from collecting the amounts due under the St. Louis Note. This interpretation of the language contained in the St. Louis Note is supported by relevant case law. In the case of *Enoch v. Brandon,* the Court of Appeals of New York was called on to interpret the predecessor to N.Y. U.C.C. §§ 3–104, 3–105 and 3–119 in determining whether coupon bonds were negotiable instruments. The bonds contained a promise to pay the bearer at a certain time. The bonds further stated that they were "equally secured by and entitled to the benefits and subject to the provisions" of the trust mortgage. The bonds referred to the trust mortgage "for a description of the property mortgaged and pledged, the nature and extent of the security, the rights of the holders of the bonds with respect thereto, the manner which notice may be given to such holders and the terms and conditions under which said bonds are issued and secured." *Id.,* 249 N.Y. at 266, 164 N.E. at 46. The New York Court of Appeals found that the language set forth in the bonds related only to the security and did not render the promise to pay conditional. According to the Court of Appeals, it was clear that these provisions related solely to providing the lender with additional security and did not threaten the unconditional nature of

the promise to pay contained in the bonds. *Id.*, 249 N.Y. at 269, 164 N.E. at 47.

Likewise, the references in the St. Louis Note to the St. Louis Mortgage relate to the additional security provided to the lender, and are not meant to modify or abrogate the obligation to pay under the St. Louis Note. The references are merely meant to advise the borrower that the St. Louis Mortgage provides the lender with additional security.

In the case of *First Nat. City Bank v. Valentine*, 62 Misc.2d 719, 309 N.Y.S.2d 563 (Sup.Ct. Nassau Co.1970), the court was faced with determining whether a reference in a promissory note to a collateral mortgage constituted a qualification of the unconditional promise to pay a sum certain set forth in the note. The court found that the reference to the mortgage did not destroy the negotiability of the note and that the purpose of the reference was to add additional provisions for the security of the holder. *Id.*, 62 Misc.2d at 720, 309 N.Y.S.2d at 564. Other New York cases similarly hold that a promissory note issued in conjunction with a mortgage can be a negotiable instrument. *Gramatan*, 50 Misc.2d at 234, 269 N.Y.S.2d at 872; and *Slutsky v. Blooming Grove Inn, Inc.*, 147 A.D.2d 208, 542 N.Y.S.2d 721, 723 (2d Dep't 1989).

New York cases holding that a note given in connection with a mortgage in a real estate transaction is not a negotiable instrument either turn on facts different from the facts of this adversary proceeding or do not contain sufficient facts for this Court to examine. For example, in *Felin Assocs. v. Rogers*, 38 A.D.2d 6, 326 N.Y.S.2d 413 (1st Dep't 1971), the court provided no details concerning the subject note, but held that the note was not a negotiable instrument in the context of whether a mortgagee's offer to deliver a replacement note together with a lost note

affidavit complied with the requirements of New York Real Property § 275. In addition to this comment, the court stated; "[c]ertainly, absent affirmative proof this Court is not and should not be required to presume that the note was negotiable." 326 N.Y.S.2d at 415. Therefore, the court in the *Felin Assocs.* case kept open the prospect that a note given in connection with a mortgage in a real estate transaction could fall within the definition of a negotiable instrument.

In *United States v. Bowman Poultry Farms, Inc.*, 1994 WL 577524 (W.D.N.Y.), the court mentioned in a footnote that the notes and mortgage at issue in that decision both contained "numerous promises not authorized by article 3." Therefore, the notes were not negotiable instruments and Article 3 of the U.C.C. did not govern the transaction in question. The *Bowman Poultry Farms* case does not include a description of the notes in question and is therefore of little value, especially since the St. Louis Note does not contain "numerous promises" in addition to a promise to pay a sum certain. Likewise, the case of *P & K Marble, Inc. v. LaPaglia*, 147 A.D.2d 804, 537 N.Y.S.2d 682 (3d Dep't 1989), contains facts which are distinguishable from the facts of this case. In the *P & K Marble* case, the document in question was a combined note and mortgage which contained terms normally included in a mortgage. These additional terms rendered the document nonnegotiable, but that case does not apply to the facts and note before this Court.

■ Countrywide also challenges RMST's assertion that the St. Louis Note is payable on demand or at a definite time due to the Acceleration Language contained in the St. Louis Mortgage and partially set forth in the St. Louis Note. However, inclusion of the Acceleration Language in Section 10 of the St. Louis

Note does not destroy the negotiability of the St. Louis Note. Section 3–105(1)(c) of the U.C.C. and the Official Commentary unequivocally state that references to acceleration rights contained in a mortgage will not destroy negotiability of a note unless the reference provides that payment must be made pursuant to specific terms contained in the mortgage instrument. Section 3–109 of the U.C.C. further states that an "instrument is payable at a definite time if by its terms it is payable ... at a definite time subject to any acceleration." Therefore, it is black letter law in this jurisdiction that reference to acceleration provisions of the type contained in the St. Louis Note and St. Louis Mortgage do not affect the negotiability of the St. Louis Note. New York case law is clear that the possibility of acceleration of the note triggered by a default under the mortgage will not destroy the negotiability of the note. *Enoch v. Brandon*, 249 N.Y. at 269, 164 N.E. at 48 (citing *Higgins v. Hocking Valley R. Co*, 188 A.D. 684, 177 N.Y.S. 444 (1st Dep't 1919) and other authorities). Other jurisdictions which have adopted the identical provisions of the U.C.C. uniformly hold that references in promissory notes to acceleration clauses do not destroy the negotiability of the notes. *Third National Bank in Nashville v. Hardi–Gardens Supply of Illinois, Inc.*, 380 F.Supp. 930, 939 (M.D.Tenn.1974); and *Brown v. AVEMCO Investment Corp.*, 603 F.2d 1367, 1378 (9th Cir.1979).

■ Finally, Countrywide alleges that the St. Louis Note is not payable to order or to bearer. However, N.Y.U.C.C. § 3–110(1) clearly states that an instrument is "payable to order" when "by its terms it is payable to the order ... of any person therein specified with reasonable certainty ...". Under these circumstances, a "person" includes "an individual or an organization." N.Y.U.C.C. § 1–201(30). Because IMN is designated as the Lender under the St. Louis Note, the note is plainly payable to "order" and satisfies the relevant provisions of the U.C.C. *See, e.g., Hartford Accident & Indem. Co. v. American Exp. Co.*, 74 N.Y.2d 153, 160, 544 N.Y.S.2d 573, 542 N.E.2d 1090, 1093 (1989) (An instrument is "payable to order when the instrument specifies the payee with 'reasonable certainty.' "). Based on RMST's ability to establish the foregoing criteria, the Court concludes that the St. Louis Note is a negotiable instrument.

*iii) Value.*

The next issue to examine is whether as a matter of law RMST acquired the St. Louis Note for value. N.Y.U.C.C. § 3–302(1). It does not matter whether RMST actually purchased the St. Louis Note or whether RMST has a perfected security interest in the St. Louis Note. U.C.C. § 3–303 provides that a holder takes an instrument for value:

(a) to the extent that the agreed upon consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or

(b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due.

*See also Swiss Credit Bank v. Chemical Bank*, 422 F.Supp. 1305, 1310 (S.D.N.Y. 1976) (lender who took notes as security for outstanding line of credit was a holder in due course); and *Budget Fin. Corp. v. Bernstein*, 42 A.D.2d 893, 894, 347 N.Y.S.2d 593, 595 (1st Dep't 1973), *aff'd*, 35 N.Y.2d 761, 320 N.E.2d 864, 362 N.Y.S.2d 147(1974) (plaintiff, who received promissory notes as security for payment of a separate loan, was a holder in due course). There is no question that RMST paid IMN

$49,600. Therefore, it is clear that RMST took the St. Louis Note for value.

### iv. Good Faith.

■■■■ Under N.Y.U.C.C. § 3–302(1)(b), "good faith" "requires honesty only. It does not require the exercise of due care." *Bank of N.Y. v. Welz*, 118 Misc.2d 645, 460 N.Y.S.2d 867, 870 (Sup. Ct.N.Y.Co.1983). Good faith turns on what the holder actually knew of the transaction in question. *Regent Corp., U.S.A. v. Azmat Bangladesh, Ltd.*, 253 A.D.2d 134, 142, 686 N.Y.S.2d 24, 29 (1st Dep't 1999). "Constructive knowledge is insufficient and it is irrelevant what a reasonable [person] in [RMST's] position should have known or should have inquired about." *Id.* (citing *Chemical Bank of Rochester v. Haskell*, 51 N.Y.2d 85, 411 N.E.2d 1339, 432 N.Y.S.2d 478, 480 (1980)). Therefore, RMST has met its burden of good faith in connection with this transaction.

### v. Lack of Knowledge.

■■■■ N.Y.U.C.C. § 3–304(7) states that "to constitute notice of a claim or defense, the purchaser must have notice of the claim or defense or knowledge of such facts that his action in taking an instrument amounts to bad faith." Under New York law, a subjective test is employed to determine whether a holder has notice of a claim or defense. *Fortunoff v. Triad Land Assocs.*, 906 F.Supp. 107, 113 (E.D.N.Y.1995) (citing *Indyk v. Habib Bank, Ltd.*, 694 F.2d 54, 56 (2d Cir.1982)). The existence of "suspicious circumstances" does not constitute notice. *Id.* (other citations omitted). No evidence has been adduced that at the time it received the St. Louis Note and St. Louis Mortgage, RMST had knowledge or notice of any claims or defenses against the enforcement of the St. Louis Note and St. Louis Mortgage, and no party is challenging this fact in this adversary proceeding. There-fore, based on the documentary evidence and applicable case law, the Court finds that RMST is a holder in due course of the St. Louis Note. RMST has established by a preponderance of the evidence each of the requirements which must be met pur-suant to the relevant provisions of the U.C.C.

### 3. Rights of RMST as Holder in Due Course

■■■■ As a holder in due course of the St. Louis Note, RMST took it "free from ... all claims to it on the part of any person" and all defenses of any party to the instrument with whom RMST did not deal except for five limited defenses which do not apply in this case. N.Y.U.C.C. 3–305; *In re Joe Sipala & Son Nursery Corp.*, 214 B.R. 281, 288–89 (Bankr. E.D.N.Y.1997). N.Y.U.C.C. § 3–408 spe-cifically recognizes that holders in due course are immune from the defense of want or failure of consideration, which is the defense Countrywide is attempting to assert against RMST in this adversary proceeding. Countrywide's defense has merit against IMN and potentially Randy St. Louis, but RMST did pay value for receipt of its security interest in and to the St. Louis Note. Such a finding is necessary in order to conclude that RMST is a holder in due course of the St. Louis Note. As a holder in due course of the St. Louis Note, RMST's position is unassailable by Coun-trywide. Countrywide raises the issue of whether RMST takes the St. Louis Mort-gage as it does the St. Louis Note, or whether under New York law, RMST takes the St. Louis Mortgage subject to Countrywide's claims of failure of consid-eration. Both Countrywide and RMST agree that the Supreme Court case *Car-penter v. Longan*, 16 Wall. 271, 83 U.S. 271, 273, 21 L.Ed. 313 (1872) ("*Carpen-ter*") recites that a bona fide holder in due

course of a mortgage note "takes the mortgage as he takes the note, free from the objections to which it was liable in the hands of the mortgagee." However, Countrywide asserts that the *Carpenter* decision was overruled by the New York Court of Appeals in *The Trustees of Union College v. Wheeler*, 61 N.Y. 88 (1874) (*"Wheeler"*), and that *Wheeler* serves as a "guidepost" for all subsequent New York cases on this issue. Countrywide's arguments are fatally flawed on several grounds. First, the *Wheeler* case concerns a non-negotiable bond and mortgage and it can be cited for the proposition that under New York law, a purchaser or assignee of a mortgage may only obtain the rights to the property which were held by the transferor. *Id.* at 105. In contrast, the facts of this case turn in part on whether RMST is a holder in due course of the St. Louis Note and the extent to which, under New York law, the St. Louis Mortgage is insulated from the claims and defenses of St. Louis and/or Countrywide.

Second, the discussion contained in *Wheeler* regarding the *Carpenter* decision and other similar cases merely amounts to a statement that as of 1874 (prior to enactment of the U.C.C.), these cases were not established law yet in New York. *Id.* at 107. Furthermore, the court in *Wheeler* stated if these cases were to become law in New York, "they must be made to rest on rules of law attending the transfer of negotiable paper, and cannot be held by indirection to overthrow a rule concerning the ordinary bond and mortgage which has become fixed in our jurisdiction." *Id.* Contrary to Countrywide's assertions, *Carpenter* has become accepted law in New York. *See Gramatan Co., Ltd. v. D'Amico*, 50 Misc.2d 233, 269 N.Y.S.2d 871 (1966) (Transferee of negotiable note takes the mortgage itself free of all defenses and claims not available against the note itself, and the transfer is not affected by § 9–318

of the U.C.C.). In *American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co.*, the District Court for the Southern District of New York stated as follows:

> Under New York law, . . . the security is merely incidental to the debt and as such partakes in a sense of its negotiable character. Thus a holder in due course of a note secured by a mortgage, in a foreclosure of the mortgage, is free from those defenses of the mortgagor that could not be raised against him in an action at law on the negotiable note. *Gould v. Marsh*, 1 Hun. (N.Y.) 566; *Atlantic Trust Co. v. Crystal Water Co.*, 72 A.D. 539, 76 N.Y.S. 647 (1902); *Weaver Hardware Co. v. Solomovitz*, 98 Misc. 413, 163 N.Y.S. 121 (1917).

11 F.Supp. 418, 421 (S.D.N.Y.1935).

New York's adoption of the rule set forth in *Carpenter* is recognized in treatises as well. 78 N.Y. Jur.2d, *Mortgages and Deeds of Trust* § 272 (West 2003) clarifies that "[t]he holder in due course of negotiable paper secured by a mortgage takes the mortgage free of all equities and defenses of the mortgagor which are not available against the note itself." In fact, New York follows the overwhelming majority of states on this point. Grant S. Nelson and Dale A. Whitman, *Real Estate Finance Law* § 5.31 (3d ed.1994).

Third, the cases which cite to *Wheeler* are either inapposite or irrelevant to the facts of this adversary proceeding. *Lapis Enters. Inc. v. Int'l Blimpie Corp.*, 84 A.D.2d 286, 445 N.Y.S.2d 574 (2d Dep't 1981) and *Beck v. Sheldon*, 259 N.Y. 208, 181 N.E. 360 (1932) are of no assistance as the cases fail to even indicate whether notes were transferred, let alone whether the notes qualified as negotiable instruments. Likewise, the cases *State Street Bank & Trust Co. v. Boayke*, 249 A.D.2d

535, 671 N.Y.S.2d 359 (2d Dep't 1998) and *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580, 431 N.E.2d 278, 446 N.Y.S.2d 917 (1981) are inapposite because they concern "nonnegotiable" notes and the decisions contain no findings from the courts in question to permit a proper analysis by this Court.

Therefore, RMST's Cross–Motion is granted and Countrywide's Motion is denied to the extent that this Court finds that RMST holds the St. Louis Note and the St. Louis Mortgage free of any claims or defenses to it on the part of Countrywide. Having resolved that Countrywide cannot attack RMST's status as holder in due course of the St. Louis Note and St. Louis Mortgage as a matter of law, the Court must turn to the remainder of the Motion and Cross–Motion.

4. Applicability of Article 9 of the U.C.C.

 The parties have raised the applicability of Article 9 of the U.C.C. to this transaction. Article 9 of the U.C.C. may apply where a note and mortgage are the collateral pledged to secure performance of an obligation. *See In re Churchill Mortgage Inv. Corp.*, 233 B.R. 61, 70 (Bankr.S.D.N.Y.1999) (citing U.C.C. § 9—102(2)). Because the St. Louis Note and the St. Louis Mortgage may have been assigned to RMST, RMST may have a security interest in the St. Louis Loan. Section 9–304 of the U.C.C. states that a security interest in an instrument can be perfected by having the secured party take possession of the instrument. It is undisputed that RMST had possession of the St. Louis Note, and had a perfected interest therein, but this has no bearing on

RMST's status as a holder in due course of the St. Louis Note and St. Louis Mortgage.

5. Countrywide's Action for Rescission.

 Countrywide seeks entry of judgment in its favor on its cause of action seeking to rescind the Deed and to cancel it of record. In opposition, RMST alleges that Countrywide is not entitled to the equitable remedy of rescission because it has unclean hands and it has an adequate remedy at law. Having found that the Property is encumbered by the St. Louis Note and St. Louis Mortgage for the full amount still outstanding, and that RMST is a holder in due course of the St. Louis Note and the St. Louis Mortgage, the Court finds that it need not reach this remaining issue. The cause of action for rescission seeks relief against the purchaser, Randy St. Louis, and this cause of action does not serve to resolve a dispute affecting the Debtors' estate at all.[3] The Debtor's interest in the Property lies only in its rights as mortgagee and has nothing to do with whether the Property is owned by St. Louis or Countrywide. Regardless of who actually owns the Property, the Court has determined that RMST is a holder in due course of the St. Louis Note and St. Louis Mortgage, which determination the Trustee has consented to by stipulation. Therefore, the Court denies the portion of Countrywide's Motion seeking rescission of the contract of sale of the Property to St. Louis without prejudice to proceeding in another court for a determination of this issue

### CONCLUSION

1. The issue as to the rights pursuant to the St. Louis Note and the St. Louis

---

**3.** Countrywide in its Amended Complaint asserts that this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), (M) and (O). While these subsections may cover the portion of the complaint concerning the rights of the parties in and to the St. Louis Note and Mortgage, they do not apply to Countrywide's cause of action seeking to rescind the Deed.

Mortgage between Countrywide, the Trustee of IMN and RMST is a core proceeding.

2. The cause of action seeking rescission of the Deed between Countrywide and St. Louis is non-core.

3. The St. Louis Note, which was prepared by and endorsed in blank by IMN was property of the estate, which the estate transferred to RMST for value.

4. The St. Louis Note is a negotiable instrument. RMST is a holder in due course of the St. Louis Note as it took the St. Louis Note for value, in good faith and without knowledge or notice of any claims or defenses against enforcement of the St. Louis Note.

5. As a matter of law, RMST took the St. Louis Mortgage as it took the St. Louis Note, free from any claims or defenses asserted by Countrywide or St. Louis.

6. Countrywide's motion for summary judgment seeking cancellation of the mortgage lien pursuant to the St. Louis Note and the St. Louis Mortgage is denied as RMST's rights in and to the St. Louis Mortgage and St. Louis Note cannot be challenged on the grounds Countrywide seeks to assert.

7. RMST's cross-motion for summary judgment seeking a declaratory judgment that it is a holder in due course of the St. Louis Note and the St. Louis Mortgage, and that its rights as such are superior to those of Countywide and are enforceable against the Property, is granted.

8. Countrywide's motion for summary judgment seeking to rescind the Deed granted to St. Louis and to cancel the Deed as of record is denied without prejudice to seek such a determination in the State Court.

Pursuant to the findings contained in this memorandum decision, an order will be entered simultaneously herewith.